E. J. Clapper, Retta Clapper, Lola Clapper Wilson, Lillie Beavers and Sarah Ellen Collins v. Lyman Lakin, Nena Litton, and Belle Lakin, Widow, Archie Lakin, Raymond Lakin, Phoebe Shelton, Children and Heirs-At-Law of C. E. Lakin, and Myrtle Hanes, Mary Lakin, Annie Lakin, Freddie Lakin, Johnny Lakin, Henry Lakin, Alma Endicott, Thornton Butler, Freeman Butler, Mrs. Ida Foster, W. Osborn Clapper, T. Chester Clapper, Othal Clapper, Opal Clapper, Jerry Clapper, Jr., Ethel Clapper Hollowell, and all the unknown Consorts, Heirs, Devisees, Donees, Alienees, and the Immediate Mesne or Remote, Voluntary or Involuntary Grantees of the Following Named Deceased Person, Namely To-Wit: Merit Clapper, Phoebe Clapper Lakin, Hulda Clapper Lakin, Mary Clapper Butler, Henry Clapper, Jr., Frances Clapper Manning, Freeman Clapper, Calvin Clapper and Jerry Clapper, Sr., Defendants, Lyman Lakin, Nena Litton, C. E. Lakin and Myrtle Hanes, Appellants.—123 S. W. (2d) 27.

Division One, December 20, 1938.

*Lon Kelley* and *Gardner & Gardner* for appellants.

712

*A. R. Dunn* and *Ruark & Ruark* for respondents; *Frank Ertell* for Thornton Butler, Freeman Butler and Alma Endicott.

FERGUSON, C.—The petition herein is in two counts; the first is an action (under Sec. 1520, R. S. 1929) to try or determine title to certain lands situate in Newton County and therein described; the second count is an action to partition said lands. The suit was commenced in the Circuit Court of Newton County but went on change of venue to the Circuit Court of McDonald County where a trial was had and the verdict of the jury, upon the sole and determinative issue of fact, being in favor of plaintiffs, judgment was entered on the first count decreeing the title to said lands as alleged and claimed by plaintiffs, and judgment of partition was entered on the second count in accordance with the interest of the parties as so found and decreed. The answering defendants appealed and title to real estate being involved the appeal comes to this court.

The determinative issue is made by the first count, the action to try title. It is therein alleged, that the plaintiffs Lillie Beavers and Sarah Ellen Collings, are sisters of Merit Clapper, deceased, that plaintiffs Retta Clapper and Lola Clapper Wilson are the "only children and heirs-at-law of Calvin Clapper, deceased, who was a brother of Merit Clapper, deceased, said Calvin Clapper having predeceased the said Merit Clapper," and that plaintiff E. J. Clapper is a child and heir-at-law of Henry Clapper, Jr., deceased, a brother of the said Merit Clapper, deceased, who predeceased the said Merit Clapper; that plaintiffs "are the owners in fee simple of an undivided interest in the" lands described; that they "acquired such undivided interest by descent an inheritance from Merit Clapper, who died intestate in Newton County . . . on the 14th day of October, 1933;" that "at the time of his death, the said Merit Clapper left surviving him no wife or children or father or mother and that at the date of his death the said Merit Clapper was the owner in fee simple of the whole of the real estate," described; that "the said Merit Clapper left surviving him as he only heirs-at-law" the plaintiffs, whose relationship is alleged as stated above, that is, two sisters, a nephew and two nieces, of the full blood, and the defendant who are alleged to be the children and heirs-at-law of Hulda Clapper Lakin, Mary Clapper Butler and Henry Clapper, Jr., deceased sisters and brother of the said Merit Clapper, deceased, and therefore nieces and nephews, of the full blood, to Merit Clapper, except it is alleged that defendants Lyman Lakin, Nena Litton, C. E. Lakin and Myrtle Hanes are nieces and nephews of the half blood to Merit Clapper. The said defendants, Lyman Lakin, Nena Litton, C. E. Lakin and Myrtle Hanes answered. Their answer admits, the death, the date and place thereof, and intestacy of Merit Clapper, that he left no father, mother, wife, children or other descendants surviving him and that at his death he was the owner in fee of the real estate described, all as alleged in the petition. The answering defendants then deny that they are nieces and nephews of the half blood to Merit Clapper, as alleged in the petition, and "further deny that any of the parties to this suit, other than these answering defendants, inherited any part or portion of the real estate described from Merit Clapper or that any of the parties to this suit, or either of them, other than these answering defendants, now own or have any title, right, or interest in and to the land described in said petition; deny that Lillie Beavers, Sarah Ellen Collings (two of the plaintiffs) . . . Hulda Clapper Lakin, Mary Clapper Butler, Henry Clapper, Jr., . . . Calvin Clapper, mentioned in said petition, or either of them, were full brothers or sisters to Merit Clapper, but allege the facts to be" that they "were half brothers and

half sisters to the said Merit Clapper by a common father, Henry Clapper; that the said Henry Clapper intermarried with Nancy McNutt, who at the time of said marriage had an infant daughter named Phoebe, who after said marriage lived with the said Henry Clapper and his wife and went by the name of Phoebe Clapper; that when the said Phoebe Clapper was a mere child, about sixteen years of age, and while the said Henry Clapper was the husband and living with Nancy Clapper, his wife, an illegitimate son was born to the said Phoebe Clapper by said Henry Clapper, which said son was given the name of Merit; that Merit was reared as one of the Clapper family and was called Merit Clapper; that his mother, Phoebe Clapper, thereafter married Josiah Lakin, and of this union these answering defendants were born; that they are, therefore, half brothers and half sisters to Merit Clapper through a common mother, Phoebe Clapper Lakin, and as such are the sole and only heirs of Merit Clapper, deceased, and are entitled by inheritance through their mother to the entire estate of the said Merit Clapper, deceased, including the real estate mentioned in plaintiffs' petition.'' The answering defendants make the same answer to the partition count, deny that plaintiffs or any of the other parties to the suit, except themselves, inherited any part or portion of the estate of Merit Clapper or are entitled to a distributive share therein, and say that they (the answering defendants) do not desire that partition of said lands be made. Thus plaintiffs' claim of title or interest in the lands of which Merit Clapper died seized is dependent upon the existence of the relationship to Merit Clapper, deceased, alleged in their petition, that he was a full brother of the children of Henry and Nancy Clapper, both deceased, that is, that Merit Clapper was the son of the said Henry and Nancy Clapper. The sole issue therefore was one fact. We shall hereinafter refer to the answering defendants merely as the defendants.

█ Appellants first assignment is that plaintiffs did not make out a submissible case and that the trial court erred in refusing their request for a directed verdict made at the conclusion of all the evidence. This contention necessitates a statement of the facts in evidence most favorable to plaintiff's case. First, however, certain introductory or preliminary facts. Defendants put in evidence a duly certified copy of a certificate of marriage showing the marriage of Henry Clapper and Nancy McNutt at Seneca County, Ohio, July 22, 1850, and that Henry Clapper was at that time twenty-five years of age and Nancy McNutt twenty-one years of age. There was evidence on the part of defendants tending to show that defendants' mother, Phoebe Lakin, was born to Nancy McNutt April 4, 1849, and that Phoebe was more than one year of age at the time of the

marriage of her mother to Henry Clapper. Phoebe was reared in the Clapper home as a member of the family and was known as Phoebe Clapper. Presumably Phoebe was the child of a previous marriage of her mother. The following children in the order named were born to Henry and Nancy Clapper, Hulda, Mary, Henry, Jr., two children who died in infancy, Frances, Freeman, Calvin, and Sarah Ellen. The next child born in the Clapper home was Merit whose maternity is in controversy in this action. The next child was Lillie. These children were all born in the State of Ohio. About 1874 the Clapper family moved to the State of Kansas where Phoebe married Josiah Lakin, of which union the four defendants were born, and Hulda married Lemuel Lakin. Phoebe and Hulda were married on the same date April 23, 1874. Upon their marriage Phoebe and Hulda left the Clapper home and remained with their husbands in Kansas when the Henry Clapper family moved, about 1875 or 1876, to McDonald County, Missouri, where the family thereafter continued to reside. The mother, Nancy Clapper, died in 1881. The writer does not recall that the record definitely shows the date of death of the father Henry Clapper but apparently he died about 1900 or 1901. Phoebe Lakin died in August, 1912. Merit Clapper grew up in the Henry Clapper home, moved to Newton County, married and prospered. No children were born of his marriage and his wife died about 1912. He never remarried and died in October, 1933, intestate. At the time of his death he owned the lands, title to which is in controversy herein, in fee simple. The following children of Henry and Nancy Clapper predeceased Merit, Hulda Lakin, Mary (Clapper) Butler, Henry Clapper, Jr., Frances (Clapper) Manning, Freeman Clapper and Calvin Clapper. Their children and heirs-at-law are parties to this action. Sarah Ellen (Clapper) Collings and Lillie (Clapper) Beavers two of the children of Nancy and Henry Clapper survived Merit and have joined as plaintiffs in this action.

To sustain and establish their claim of title to and interest of the parties hereto in the lands of which Merit Clapper died seized plaintiffs adduced evidence purporting to show that Merit Clapper was the son of Henry and Nancy Clapper and a full brother of the children of Henry and Nancy Clapper. The evidence on the part of the plaintiffs was to the effect that Merit was born in the Henry and Nancy Clapper household and was reared and grew up as a son of Henry and Nancy Clapper and as a brother to the Clapper children; that Henry and Nancy Clapper referred to him as a son and treated him as such; that he called Henry Clapper "Pap" and Nancy Clapper "Mother;" that he called and referred to the Clapper children as brothers and sisters and they spoke of him as brother; that close neighbors and kin regarded him as the child of Henry

and Nancy Clapper and he so regarded himself; that he prospered more than the other members of the family and in later life was generous and affectionate, without any noticeable partiality or discrimination, toward his putative brothers and sisters. He helped Calvin and his family and at one time bought them a farm. He extended aid to Freeman's family and also to the family of Phoebe Lakin and in his later years he was particularly fond of Lola Clapper, the daughter of Calvin Clapper, deceased. She helped care for him in illness and he made her numerous gifts and said that she looked like his mother (her grandmother) Nancy and gave Lola some old pictures of Nancy Clapper at which time he spoke of Nancy Clapper as his mother. This, as we recall the evidence, was shortly before his death. Plaintiffs put in evidence the census report of June 1, 1880, showing Merit Clapper, age fifteen years, listed as the son of Henry and Nancy Clapper.

For the present we leave the evidence on the part of the plaintiffs in order to refer to some of the evidence offered by defendants; after which we will set out further evidence on the part of the plaintiffs tending both to rebut defendants' evidence and to sustain plaintiffs' claim that Merit Clapper was the child of Henry and Nancy Clapper. Following their marriage in 1874 Phoebe and Josiah Lakin lived in Kansas, Illinois, Nebraska and Iowa. During which time the four defendants were born. The family came from Iowa to McDonald County in 1891 and visited for about two weeks at that time at the home of Henry Clapper. It will be remembered that Nancy Clapper had died in December, 1881, and the family then at the Henry Clapper home consisted only of Henry Clapper, Freeman and Merit. Merit was then twenty-six years of age. After this visit Phoebe Lakin's family went to Columbus, Kansas, but in 1892 returned to McDonald County and lived on a farm which Merit owned and permitted them to cultivate. The house on this farm was a short distance from the Henry Clapper home. Phoebe and her oldest daughter Nena who was then about fifteen years of age did most of the house work at the Henry Clapper home. Nena (Lakin) Litton, who is a defendant, testified that in 1891, when she was about fourteen years of age, her mother, told her that she (Phoebe) was the mother of Merit Clapper and that Henry Clapper was his father; that Henry Clapper was the stepfather of Phoebe and that when she (Phoebe) was about fifteen years of age Henry Clapper forced her to have sexual intercourse with him and that Merit Clapper was born of that relationship; and that Merit was born on April 2, 1865. Mrs. Litton who at the time of the trial was fifty-seven years of age further testified that, when the Lakin family took up residence in McDonald County near the Henry Clapper home and she and her moth-

er were doing the house work there, her mother (Phoebe) warned her against any approaches that Henry Clapper, who was then sixty-seven years of age, might make to her; that when she was about fifteen years of age Henry Clapper on one occasion attempted to take hold of her and that she ran from the house and told her mother who was nearby and thereupon her mother berated Henry Clapper in the presence of Merit and charged at that time that Henry Clapper had "ruined her" when she was a girl and had forced her to have sexual relationship with him of which relationship Merit was born; that her mother (Phoebe) told Merit that she was his mother and that Henry Clapper was his father (this in about 1892); that Henry Clapper told her (Nena Lakin), when she was "a kid 15 years old," that Merit was his son and that her mother (Phoebe) was Merit's mother. The defendant Cyrus Lakin the youngest son of Phoebe testified to substantially the same state of facts as did his sister Mrs. Litton, that is, that his mother (Phoebe) had told him that Merit was her child by her stepfather Henry Clapper. The defendants also had the testimony of elderly persons who had lived many years in the same community with the Henry Clapper family in McDonald County to the effect that there had been a long standing rumor in the community that Merit was an illegitimate child and that Nancy Clapper was not his mother.

Returning now to the evidence on the part of the plaintiffs. Both Mrs. Collings (Sarah Ellen Clapper) and Mrs. Beavers (Lillie Clapper), the only surviving children of Henry and Nancy Clapper and plaintiffs herein, testified that they never heard any intimation within the family or any rumor that Merit was not the child of Henry and Nancy Clapper but was a bastard and that the first they ever heard of such a claim was after Merit's death when it was asserted by the Phoebe Lakin children. Plaintiff also had testimony of elderly men and women, who had known the Clapper family from the time they first came to McDonald County and had resided in the same community, that they had never heard it charged or said that Merit was an illegitimate child and had heard no rumor in the neighborhood to that effect and that they had never heard such claim made until after Merit's death when it was asserted by the Lakin children. It will be recalled that Phoebe Lakin died in August, 1912. At the time of her death she had title to a small tract of land. As will be noted this was twenty years after the time, according to defendants' evidence, Merit and the Lakin children had been informed that Merit was the son of Phoebe nevertheless in October, 1913, the four Lakin children, the answering defendants herein, sold and conveyed the tract of land, which their mother owned at her death, by warranty deed, reciting therein that they were all of the children and heirs-at-law

of Phoebe Lakin, deceased. Calvin Clapper, one of the children of Henry and Nancy Clapper had a son named Carl Clapper who was killed in France during the World War. Payments on the insurance on the life of Carl Clapper were paid to his father Calvin. Calvin died about 1922 and it was required that certain papers be executed to make a transfer of the insurance payments to the widow and two daughters of Calvin Clapper. Merit Clapper assisted his sister-in-law and nieces in that connection and the papers which were executed show, Merit Clapper's signature and that, he stated, at that time, that he was fifty-seven years of age and was a son of Henry and Nancy Clapper. Plaintiffs had the testimony of numerous neighbors and close friends and associates of Merit Clapper including his physician, the owner of the store where he traded in the later years of his life, his business adviser, who was the mayor of the City of Neosho, people who had worked for him and with him, people who had nursed him in illness, people who had gone to school with him and who had grown from boyhood to manhood with him, all of whom testified that Merit was known in the Clapper family, and in the community generally as the son of Henry and Nancy Clapper, and as a brother to the Clapper children, and that he had at all times claimed and asserted that relationship. There was much testimony by these witnesses that in the years subsequent to the time defendants claim that Merit Clapper was informed both by Phoebe Lakin and Henry Clapper that he was the illegitimate child of Phoebe (Clapper) Lakin, Merit, by his statements, his treatment of his relatives, the introduction of various children of the Clapper family to acquaintances as my brother or my sister, to the time of his death considered and thought himself to be a child of Henry and Nancy Clapper and a brother to their children. One of plaintiffs' witnesses testified that shortly before the death of Merit Clapper, in October, 1933, he had a conversation with him in which they were talking about their respective families and at which time the witness said, "I don't have any brother to take care of me, they are all half brothers," whereupon Merit remarked, "I don't have any half brothers."

It is in evidence that no family record of the Henry Clapper family showing the name and date of birth of the Clapper children, is in existence. It further appears that no direct proof of the maternity of Merit Clapper is available. Therefore the best evidence available was adduced, that is, family history and repute, the conduct and attitude of the immediate family—the putative parents and brothers and sisters, and other evidence of a circumstantial nature. The evidence as a whole, together with the natural and logical inferences which, in the light of common experience, may reasonably be drawn therefrom, considered from the view point most favorable

to plaintiff, we think it cannot be gainsaid that plaintiffs made a submissible case. But appellants say that "the admission by Lillie Beavers," one of the plaintiffs and the youngest child of Henry and Nancy Clapper, "that she was 69 years of age at the time of the trial . . . destroys plaintiffs' case." This contention is based upon the following circumstances. The census report, together with pedigree evidence of a hearsay nature or repute, tended to show that Merit Clapper was born April 2, 1865. The trial was in September, 1934. Mrs. Beavers having stated her birthday was August 7, also stated, in reply to a question as to her age, that she was sixty-nine. If then sixty-nine years of age she was born August 7, 1865. Without considering her testimony as a whole appellants contend that plaintiffs are concluded by the answer that she (Mrs. Beavers) was sixty-nine years of age at the time of trial, hence born August 7, 1865, four months and five days after the birth of Merit and therefore, according to nature, she and Merit could not have been born of a common mother and further that it is conceded Mrs. Beavers (Lillie Clapper) was a child of Nancy Clapper. In this connection appellants invoke the rule announced in Steele v. K. C. So. Ry. Co., 265 Mo. 97, 175 S. W. 177, and applied in numerous subsequent cases which are cited. It is held in the Steele case that "ordinarily a party is not absolutely concluded by his testimony in a case where subsequently upon some excuse of mistake, oversight, misunderstanding, or lack of definite recollection he denies the statements forming the admissions." But if the party-witness makes no correction whatever he is concluded by his admission and if he makes no correction aside from merely stating subsequently a state of facts diametrically contradictory of what he had previouly testified without any claim of mistake or oversight or misunderstanding or explanation of the variance he is likewise concluded. The essence of the rule is that it would be unjust to allow a party to recover after he has clearly and unequivocally sworn himself out of court. Respondents say that all the evidence bearing on Mrs. Beavers' age, her testimony in its entirety together with the other evidence touching that question, sustains the conclusion that she was born August 7, 1866, and was at the time of trial sixty-eight years of age. It would unduly lengthen this opinion to set out the testimony of Mrs. Beavers verbatim and in full nor do we deem that necessary. She was asked, "What year were you born, if you recall," and answered, "1866 or 1865." She testified, that she recalled the joint wedding of Phoebe and Hulda, "was at the wedding" and that she was "about 8 or 9" at that time. We have noted that the wedding was April 23, 1874. If she was born in August, 1866, she would have been eight in August, 1874, or if born in August, 1865, she would have been nine in August,

1874. She testified that, as she recalled, "there was about 14 months between my age and Merits." If she was born in August, 1866, there would have been, accepting the date of Merit's birth as April 2, 1865, approximately sixteen months difference in age. The next reference to her age is her testimony that she was fourteen or fifteen when her mother died. As noted her mother, Nancy Clapper, died in December, 1881. If born in August, 1866, she had become fifteen in August before her mother died in December. Her next reference to her age is, "I guess I was about sixteen when I married." She was married August 27, 1882. If born August 7, 1866, she would have become sixteen on August 7, 1882, twenty days before her marriage. In the course of her testimony she stated "my memory isn't quite good now as it once was" and that she "didn't have any Bible or anything to go by . . . I had a record in a Bible, but it burned with my house several years ago." If born in August, 1866, she had attained the age of sixty-eight during the month preceding the trial (September, 1934) and was at that time in her sixty-ninth year. Her testimony considered in its entirety it is apparent that her answer to the question as to her age that she was sixty-nine was not such a conclusive admission as is contemplated by the rule which appellants would invoke. Her testimony is inconclusive and shows at most "a lack of definite recollection" about a matter which she could not have known of her own knowledge, which she could have learned only from her parents or older members of the family or by family repute, and of which no record of any kind existed. The value and credibility of her testimony was for the jury. Mrs. Beavers' husband, William Beavers testified that, "I guess my wife was 16 when I married her, but I gave it higher than she was." Neither Mrs. Beavers or her sister and co-plaintiff Mrs. Collings could state definitely the date of birth or age of the Clapper children, they could, however, name them in order of age and approximate the time intervening. Several witnesses who had known Merit and Lillie (Mrs. Beavers) as children and had gone to school with them stated that there was a reputed difference of more than a year between their ages, Merit being the older, and that there was a difference of at least 14 months between Merit and Lillie seems to have been a matter of common repute in the Clapper family. We are of the opinion the trial court was not in error in submitting the case to the jury.

Appellants assign as error plaintiffs' given Instruction numbered 2, relating to the burden of proof which reads: "The jury are instructed that if Merit Clapper was raised in the home of Henry and Nancy Clapper along with the other children and regarded and treated by them and the other children as a son of Nancy and Henry Clapper, then the burden is upon the defendants to prove by clear

and satisfactory evidence that Merit Clapper was a bastard and unless the defendants have so proven your verdict must be for the plaintiffs.'' Certainly the term, ''the burden,'' in the connection here used, imports that the burden shifted to or cast upon the defendants is the burden of proof and must have been so intended. It could not have been intended to refer to the necessity of going forward with the evidence, or the burden of the evidence, for that would have no place in an instruction, being a matter solely for the court and not the jury. However, as we understand the position of plaintiffs, respondents here, they frankly admit that the instruction was intended to, and does, tell the jury that upon a showing made by plaintiffs as set out in the instruction the burden of proof shifts to defendants. Respondents say that their evidence, as stated in the instruction, that ''Merit Clapper was raised in the home of Henry and Nancy Clapper along with the other children and regarded and treated by them and the other children as a son of Nancy and Henry Clapper'' created a legal presumption of legitimacy in their favor, that is, that Merit Clapper was the legitimate child of Henry and Nancy Clapper and the other Clapper children his brothers and sisters, and thereupon the burden of proof shifted to defendants. Both parties have discussed at some length the presumption of legitimacy and when and under what circumstances it may be invoked. No case similar on the facts is cited nor has the writer been able, after diligent search, to find such a case. It is interesting to note that in all the cases cited, dealing with the presumption of legitimacy, it is the paternity of the child that is in question and not as here the maternity. It is conceded in this case that Henry Clapper was the father of Merit but his maternity is in issue. However it is not necessary for us to enter upon a discussion of whether there was a legal presumption of legitimacy in this instance. If defendants had stood on their demurrer to the evidence at the close of plaintiffs' evidence and had not come forward with evidence tending to rebut plaintiffs' evidence then we would have a live question as to whether upon the showing made by plaintiffs there was a legal presumption of legitimacy which would prevail in their favor and entitle them to a directed verdict. In this case plaintiffs put in evidence facts and circumstances tending to sustain their claim that Merit Clapper was the son of Henry and Nancy Clapper and the trial court held, in which we concur, that they made a prima facie case. The defendants then came forward with evidence tending to show that Merit Clapper was the illegitimate child of Henry Clapper and Phoebe Clapper. There was then an issue of fact for the jury and the jury could draw such inferences and make such findings of fact from the whole evidence as they deemed proper and warranted, but the legal presump-

tion, if one could be said to have existed, was solely for the court in determining, upon defendants' challenge, whether plaintiffs made a prima facie case. Assuming that upon plaintiffs' evidence there was a legal presumption of legitimacy nevertheless such presumption did not, as respondents contend, affect or shift the burden of proof. [Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S. W. 1043; McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557; Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S. W. (2d) 710; Weaver v. Allison, 340 Mo. 815, 102 S. W. (2d) 884.] In Griffith v. Continental Casualty Co., supra, this court discussing the effect of the presumption against suicide, said: "The presumption against suicide is a rebuttable legal presumption. . . . In its character as a presumption it is not evidence, it is a mere rule of law which operates to throw upon the party against whom it is raised the duty of going forward with the evidence. . . . It performs no other function and has no other significance. 'A presumption has only the effect of throwing upon him against whom it is raised the burden of proceeding with his proof, but not shifting the general burden of proof in the case. . . .' [1 Jones, Comm. on Evidence, sec. 10f.]" As first noted, to sustain plaintiffs' claim of title to and interest in the lands of which Merit Clapper died seized, as same is alleged in the petition, plaintiffs must show that Merit Clapper was a brother of the children of Henry and Nancy Clapper, as they allege, that is, that Merit Clapper was the child of Henry and Nancy Clapper. The answering defendants, appellants here, denied both generally and specifically that plaintiffs and the heirs of the deceased Clapper children had any title or interest in the lands. It is not even contended that defendants set up an affirmative defense. Therefore upon the pleadings the affirmative of the issue, that is, the burden of proof was upon the plaintiffs. "The burden of proof, meaning the obligation to establish the truth of the claim by preponderance of the evidence, rests throughout upon the party asserting the affirmative of the issue. . . . This burden of proof never shifts during the course of the trial." [Downs v. Horton, 287 Mo. 414, 230 S. W. 103.] "It is elementary that the burden of proof rests upon the party having the affirmative of an issue, and that that burden never shifts." [Griffith v. Continental Casualty Co., supra.] "The burden of proof to establish the affirmative of an issue involved in an action rests upon the party alleging the facts constituting that issue, and remains there until the end." [10 R. C. L. 898.] At 22 Corpus Juris, page 70 it is said: "The rule as to burden of proof is important and indispensable in the administration of justice and constitutes a substantial right of the party upon whose adversary the burden rests." And this court holds that "an instruction which places the burden

of proof on the wrong party is prejudicially erroneous." [McClosky v. Koplar, supra.] It follows that the giving of plaintiffs' Instruction 2 was prejudicial error.

As the cause must be remanded the criticism which appellants level at certain other instructions as being a comment on the evidence can be, and likely will be, avoided on another trial.

Since the trial of this case, the defendant C. E. Lakin has died, and the cause has been revived as to him in the name of his heirs.

For the error noted the judgment is reversed and the cause remanded. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.