Tessie Lee **LEDKINS**, Plaintiff-Appellant,

v.

**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY**, a Corporation, Defendant-Respondent.

No. 46466.

Supreme Court of Missouri,

Division No. 1.

Sept. 8, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 13, 1958.

Dwight Roberts, Ted V. McGuire, Kansas City, and Walter A. Raymond, Kansas City, for appellant.

Frank J. Rogers, Kansas City, Joe E. Burris, Kansas City, for respondent.

WESTHUES, Judge.

This is a suit filed by plaintiff Tessie Lee Ledkins in the Jackson County Circuit Court against the Missouri-Kansas-Texas Railroad Company to recover damages sus-

tained by plaintiff on December 18, 1955, about 4:45 p. m., when a pickup truck in which she was riding collided with one of defendant's trains at a crossing in Clinton, Missouri. Plaintiff asked for $150,000. A trial resulted in a verdict for the defendant and plaintiff appealed.

The points briefed concern instructions given by the trial court at defendant's request and the admission in evidence of photographs and moving pictures.

The charges of negligence submitted to the jury were speed of the train in excess of 15 m. p. h., as provided by the ordinance of the City of Clinton, and failure to ring a bell or blow a whistle continuously for a distance of 80 rods prior to reaching the crossing. Defendant contended that it was not negligent; that plaintiff was guilty of contributory negligence as a matter of law; and that the negligence of the driver of the pickup truck in which plaintiff was riding was the sole cause of plaintiff's injuries.

Plaintiff lived in Kansas City, Missouri. Her mother, who lived in Arkansas, had been to Kansas City for a visit. Plaintiff's uncle took plaintiff and her mother to Arkansas where the mother remained and the uncle and plaintiff began their journey back to Kansas City on December 18, 1955. They stopped in Clinton, Missouri, at a gas station about four blocks south of the point on Third Street (a north-south street) where the defendant's tracks cross Third Street. After a short stop, they resumed their journey going north on Third Street. About that time one of defendant's freight trains was approaching the crossing from the northeast. It was shown by the evidence, and not disputed by plaintiff, that the pickup truck driven by plaintiff's uncle was turned to the left of and driven past cars stopped on the east side of the street waiting for the train to pass to the crossing where it collided with the front of the diesel. Plaintiff's uncle was instantly killed and plaintiff was seriously injured. She was unconscious for several days. It was conceded that the three cars headed north on Third Street had stopped on the south side of the tracks waiting for the train to pass. It was also conceded that "the crossing signals, flashing lights and bell were working" and that the street is level from the filling station to the tracks. A number of witnesses testified that they heard the whistle of the train and also its bell. Other witnesses testified that they heard no bell or whistle from the approaching train. There was also a dispute as to the speed of the train. Various witnesses estimated the speed from 12 to 30 m. p. h. Plaintiff introduced the tape of the speedometer on the engine of the train which showed a speed of 30 m. p. h. at the time of the emergency application of the brakes. Plaintiff introduced an ordinance of the City of Clinton which restricted trains going south to a speed of 15 m. p. h.

Plaintiff testified that she did not remember anything that occurred after she re-entered the truck at the service station four blocks south of the crossing. She testified that her uncle was a good and careful driver; that the truck was in good condition. Her deposition was taken some time prior to trial and the defendant introduced a portion thereof as admissions against interest. The pertinent part reads as follows:

" 'Q. But you knew there were railroad tracks there in Clinton, you had crossed those on these other trips? A. Yes, I knew there was railroad tracks there.

" 'Q. Do you remember how fast, at about what speed your uncle was driving before you came to this filling station where your memory is cut off? A. No, I sure don't. I never did pay no attention, but I knew he didn't drive very fast.

" 'Q. Do you remember about there being some stop lights there at that station where you got gas? A. No,

I don't remember whether there are ·or not.

" 'Q. You knew that there were ·some railroad tracks right on beyond ·that station, did you? A. Yes, we always knew them was there.

" 'Q. And you knew that they had ·these flasher lights to protect you crossing there at the crossing, you had ·seen those, hadn't you? A. No, I ·never seen them, not that I remember ·of.

" 'Q. You had been over that crossing how many times? A. Lots and lots and lots of times.

" 'Q. And you don't remember— you knew the crossing was there? A. Yes.

" 'Q. You didn't sleep any on the trip down there?' A. No.

" 'Q. You don't go to sleep when you ride in the car? A. No, sir.

" 'Q. You watch what is going on, is that right? A. No, I just ride along. I never sleep, never go to sleep, though.

" 'Q. Do you watch ahead? A. No, I just—I just depend on whoever is driving to get me there safe. I never pay no attention.

" 'Q. You keep your eyes open? A. Well, naturally, I just—you know.' "

Donald W. Lang, a brakeman riding in the front diesel, testified that he noticed the truck approaching on the left side of the road when it was 50 or 60 feet from the crossing; that it was going about 30 m. p. h. and did not reduce speed until it struck the front side of the diesel; further, that when he first saw the truck, he immediately called to the engineer and the emergency brakes were applied. When asked if he saw anyone in the truck, he stated, "I saw a woman." Further questioning brought out the following:

"Q. What did you see? Did this woman do anything? A. Throwed her hand up and fell backwards.

"2. Where was the truck with reference to the crossing when you observed that? A. I couldn't say exactly how many feet or anything, approximately 30 or 40 feet out there."

The evidence was that a driver of a car when 100 feet south of the Third Street crossing could see the front of a train coming from the northeast for at least 100 feet before it reached the Third Street crossing.

Respondent railroad says that plaintiff was guilty of negligence as a matter of law "in following her admitted custom and practice of paying no attention and in entrusting her safety absolutely to the driver regardless of the crossing lights and bells admittedly operating and the line of automobiles stopped for the crossing." Plaintiff says that since she, because of her injuries, does not remember anything that occurred about the collision, she is presumed to have exercised due care. The railroad cited, among others, the case of Toburen v. Carter, Mo., 273 S.W.2d 161, and the plaintiff cited, among others, the case of Borrson v. Missouri-Kansas-Texas R. Co., Mo., 161 S.W.2d 227. We find no fault with the ruling in either case cited. We agree with what was said in the Toburen case, 273 S.W.2d loc. cit. 164(3, 4), that a passenger must exercise ordinary care for his own safety and warn the driver of the car of the danger of collision if in the exercise of ordinary care the danger could be discovered. We also agree with the ruling in the Borrson case that a passenger killed in a collision is presumed (in the absence of evidence to the contrary) to have exercised ordinary care. In the case before us, the passenger is living and she testified. If, as she stated, it was her habit to pay no attention to the operation of a car and to depend entirely on the driver

to get her safely to her destination, she would be guilty of contributory negligence if, in the exercise of ordinary care, she should have discovered danger and failed to warn. One of defendant's witnesses, the brakeman riding in the front diesel, stated that the woman in the truck (plaintiff) "threw up her hand and fell backwards" when the truck was about 30 or 40 feet from the point of collision. So, it was in evidence that plaintiff was conscious of the danger and was in the act of a demonstration indicating that she was in danger. From this the jury could have found that she was at that point protesting to the driver about his actions. However, the jury could also have found that the demonstration came too late; that she paid no attention to the danger and depended, as was her custom, on the driver to get her safely to her destination. We, therefore, rule the point against the defendant that plaintiff was guilty of negligence as a matter of law. We also rule against the plaintiff on the first point made in the brief that the defendant's instruction No. 15, submitting contributory negligence, should not have been given for the reason that it was not supported by evidence. Plaintiff knew they were approaching a railroad crossing; the driver turned to the left lane to pass cars which had stopped for the approaching train; the crossing bell and red flasher lights were operating. All of these indicated danger ahead. Any degree of care on the part of a passenger riding in the front seat where all of these signs were obvious would require a timely protest to the driver.

In the second point briefed, plaintiff says that it was error for the trial court to instruct the jury that the burden of proof was "upon the plaintiff to prove her case against defendant by a preponderance, that is, the greater weight of the credible evidence * * *." (Instruction No. 14) Plaintiff contends that all she was required to do was to show by evidence that no statutory warning was given, that is, the sounding of a whistle or ringing of a bell while the train was approaching the crossing; that such evidence raised a presumption that the failure to give such a warning was negligence and contributed to the injury; that the burden was upon the defendant to prove that such negligence was not the proximate cause of the injury. The cases cited by plaintiff do not sustain her contention. We shall begin with the last case cited, McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641, wherein by a divided vote this court en banc ruled that generally speaking in all negligence cases the burden of proof remains with the plaintiff and does not shift to the defendant; that upon a showing of certain facts, a plaintiff makes a case for a jury and then it is up to the defendant to produce evidence tending to show no negligence. The court, in the McCloskey case, 46 S.W.2d loc. cit. 563(6), said, "The plaintiff still carries the risk of nonpersuasion, and must show by the greater weight of the evidence that he was injured as a result of the defendant's negligence. *In so far as the cases herein cited to the contrary, they should be overruled.*" (Emphasis supplied.) That rule has been accepted by this court in subsequent cases.

Plaintiff cited Reynolds v. Thompson, Mo., 215 S.W.2d 452, as holding that if a plaintiff introduced evidence that the statutory signals were not given, the burden of proof was on the defendant to show that such failure was not the cause of the injury. In that case, the sole question before the court was whether upon such showing the plaintiff had made a case for a jury. The trial court had directed a verdict for the defendant and had sustained plaintiff's motion for a new trial. This court affirmed the court's order. Plaintiff cited the case of Clapper v. Lakin, 343 Mo. 710, 123 S.W. 2d 27, as an authority. As we read the case, it is authority against plaintiff's contention. A discussion of burden of proof instructions occurs at pages 32 and 33 of 123 S.W.2d (3–5). Many cases and au-

thorities were there reviewed and the court approved the rule established in the McCloskey case, supra. The point is ruled against the plaintiff.

■ Plaintiff has made another attack upon instruction No. 14 which has given us some concern. Plaintiff says the instruction places upon plaintiff a greater burden than the law requires. The instruction, after advising the jury that the burden was on plaintiff to prove her case, went on to tell the jury "and in this connection you are further instructed that in proving her case against defendant the burden is upon the plaintiff to show by the preponderance, that is, the greater weight of the credible evidence that her injuries were not solely caused by the negligence of the driver of the truck in which she was riding as submitted in Instructions 11 and 13." We surely do not approve such an instruction. It merely tends to confuse the issues. While it may be a correct declaration of law for the reason that if a plaintiff has proven that the injuries complained of were due, at least in part, to the negligence of the defendant, then the plaintiff has sustained the burden of proving that the injuries were not due to the sole negligence of a third party. Whether the error was prejudicial in this case is another question. We have concluded that in view of other instructions given the jury could not have been misled.

The court gave a number of instructions to the effect that if negligence on the part of the railroad contributed to cause plaintiff's injuries, then the jury should find for plaintiff even though the negligence of the driver of the truck also contributed to the injuries. Such a declaration was stated in instructions numbered 3, 4, 9, and 12 given at plaintiff's request. These instructions made it clear to the jury that if negligence on the part of the railroad in any way contributed to the injury of plaintiff, a verdict for her should be found. We, therefore, rule that the instruction (No. 14) when considered in connection with other instructions did not prejudice plaintiff's case.

■ In this connection, we may comment that it is odd, indeed, that attorneys insist on asking the trial courts to give complicated instructions on the burden of proof and thereby endanger their cause on appeal. We have often said that a short, simple instruction advising a jury that a plaintiff has the burden of proving his case by a preponderance, that is, the greater weight of the credible evidence is all that is necessary. See Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, loc. cit. 694–696 (5); Carson v. Evans, 351 Mo. 376, 173 S.W.2d 30, loc. cit. 33(12–14); Rouchene v. Gamble Construction Co., 338 Mo. 123, 89 S.W.2d 58, loc. cit. 63(12); Mitchell v. Dyer, Mo., 57 S.W.2d 1082, loc. cit. 1083 (4).

The giving of instruction No. 17 was made the basis of an assignment of error. The instruction reads: "You are instructed that if you find and believe from the evidence that there were automatic signals at the crossing in question and that as the automobile truck in which plaintiff was riding approached the crossing the red lights on said automatic signals were flashing and the bells on said signals were ringing and if you so find if you further find that under the conditions existing at the place and time in question such signals were adequate and sufficient warning to persons moving Northwardly in traffic on Third Street, that a train was approaching then if you so find you cannot find against defendant for failure to sound a warning." Plaintiff claims that if the engine whistle or bell were not used defendant was guilty of negligence as a matter of law and therefore the instruction given was error.

Plaintiff's instruction No. 1 submitted two charges of negligence to the jury: the first, a violation of the ordinance of the City of Clinton limiting the speed of the trains, and the second, failure to give a warn-

ing by whistle or bell on engine of the approaching train. Note how the charge of negligence as to failure to warn was submitted in the instruction: " * * * and that defendant failed to either ring a bell or blow a whistle continuously for a distance of 80 rods prior to reaching said Third Street, and that defendant was thereby negligent; and that said negligent acts of the defendant, if you so find, directly caused or directly contributed to cause said collision of defendant's railroad engine with the pick-up truck in which plaintiff was riding, and that plaintiff was thereby injured, then your verdict should be for the plaintiff and against the defendant, Missouri-Kansas-Texas Railroad Company."

A number of witnesses testified that the whistle was sounded as the train was approaching the crossing and that the bell was ringing continuously before the collision. Other witnesses testified they did not hear either whistle or bell. All witnesses agreed that the automatic crossing signals were working, that is, the red lights were flashing and the bells at the crossing were ringing.

Plaintiff's instruction advised the jury that if the defendant failed to warn by use of the whistle or bell on the engine and if such failure constituted negligence and directly contributed to plaintiff's injuries, then plaintiff was entitled to a verdict. Defendant's instruction told the jury that if the warning given by the crossing signals was adequate, then a verdict for the defendant should be found. It is our opinion that a finding for the defendant under instruction No. 17 would necessarily mean that the failure to give a warning by whistle or bell on the train did not contribute to plaintiff's injuries. Note what this court said in the case of Blackwell v. Union Pacific R. Co., 331 Mo. 34, 52 S.W. 2d 814, loc. cit. 816(3, 4): "In other words, a failure to warn by a particular method would not be negligence if an adequate warning was given by some other method.

Plaintiff concedes that she would not be entitled to recover on the ground that defendants failed to sound a signal of warning if a sufficient warning was given by the ringing of the automatic bell, or by a brakeman giving signals with a lighted lantern, or if the lights at the crossing had been burning so that the approach of the train could have been discovered in time to avert the collision."

■ It was for a jury to say whether the failure of the defendant, if it failed, to give warning of the approach of the train by sounding a whistle or ringing an engine bell was a contributing cause of plaintiff's injuries. Likewise, it was a question for a jury to say whether a timely and adequate warning was given. Hackett v. Wabash R. Co., Mo., 271 S.W. 2d 573, loc. cit. 577, 578(1–10); Knorp v. Thompson, 357 Mo. 1062, 212 S.W.2d 584, loc. cit. 587(3, 4), 5 A.L.R.2d 103; Dickerson v. Terminal R. Ass'n of St. Louis, Mo., 284 S.W.2d 568, loc. cit. 574 (16, 17). We rule this assignment against plaintiff.

■ Plaintiff says instructions 11 and 13 should not have been given. These instructions submitted to the jury the question of whether plaintiff's injuries were caused solely by the negligence of the driver of the truck in which she was riding. Plaintiff says the evidence did not justify such an instruction. If plaintiff means to say that the evidence did not justify a finding of negligence on the part of the driver, a reading of the statement of the evidence is a sufficient answer to that contention. In fact, the driver of the truck was guilty of negligence as a matter of law. It cannot be said that defendant was guilty of negligence as a matter of law because there was evidence from which a jury could find that defendant was not guilty of any negligence as submitted in plaintiff's instructions. The evidence justified the submission of the sole cause issue to a jury.

Plaintiff also says that the instructions were erroneous because they failed to hypothesize sufficient facts to constitute a sole cause situation; that they were long, argumentative, and confusing. We have examined the instructions and do not find them subject to the general objection as made by the plaintiff. By the instruction referred to as "sole cause" instruction, the court properly submitted to the jury the question of whether a third party's negligence was the sole proximate cause of plaintiff's injuries. The evidence supported such a theory and defendant was entitled to submit that issue to the jury. Plaintiff cited cases such as Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, loc. cit. 581, 582(8, 9), and Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 131, loc. cit. 133, 134(1, 2), to support her contention. In those cases, the court held that the defendant in each case was guilty of negligence as a matter of law and therefore a sole cause instruction should not have been given. We do not have such a situation in the case now before us.

Finally, in four separate assignments, plaintiff says the trial court erred in permitting the defendant to introduce in evidence numerous exhibits in the form of posed "moving and still pictures" of the scene of the collision. A number of these pictures or photographs showed a standing or moving locomotive at and near the Third Street crossing. Witnesses explained the time of and conditions under which the pictures were taken. Each side to this lawsuit produced numerous photographs and other exhibits such as plaintiff's X rays showing her injuries. We did not check to see whether plaintiff or defendant had the greater number. Aside from the waste of time during the trial, we cannot see how these pictures or exhibits prejudiced either side of the lawsuit. The trial court might have done well to limit the number of photographs to be used as evidence. A plat of the scene showing the crossing and the distances between various points, as was introduced in this case, along with two or three photographs of the crossing would have been sufficient for a jury to understand the nature of the crossing. After all, the crossing was not unlike many others and probably every member of the jury had often seen crossings of a similar nature.

The trial court was very liberal to both the plaintiff and the defendant. Six days were consumed in trying the case. The evidence, we think, was heavily in favor of the defendant.

Finding no prejudicial error in the record, we hereby affirm the judgment.

All concur.