ISAAC N. McCREERY, Appellant, v. UNITED RAILWAYS COMPANY.

Division One, May 31, 1909.

1. **NEGLIGENCE: Evidence: Sounding Gong: Not Heard.** Where no city ordinance requiring the gong of a street car to be rung was offered in evidence, a failure to ring it was not negligence *per se*; and where none of the witnesses who were in a position to hear, gave the ringing of the gong any thought or attention, and the most they would testify was that they did not recollect to have heard it, the allegation that the gong was not rung is not established.

2. ——: ——: **Speed of Car.** A casual observer cannot measure a difference in speed between ten and twelve miles an hour. And where the testimony varied in estimates of between twelve and twenty miles an hour—which of itself impairs confidence in its correctness—and the witness best situated to observe did not notice the speed, and another witness first declared his inability to estimate the speed in miles per hour and then stated it was going eighteen to twenty miles, and all the other witnesses' testimony was to a like effect, against which is the physical fact that the car stopped within a few feet of the place of accident and at its usual place of stopping, it cannot be said that there was any satisfactory evidence that the speed of the car was in excess of the maximum ordinance rate of ten miles an hour.

3. ——: ——: ——: **Guess.** When a witness disclaims ability to form an opinion he should not be told by the court that he may guess for an answer.

4. ————: Collision Between Car and Automobile: Conclusion of Witness. Plaintiff is not entitled to a mere conclusion that a witness may draw when the facts stated show that the conclusion is without reason. It was physically impossible for the steps of a street car to have struck the automobile if the automobile was in front of the car; and it was impossible for the automobile to have got in front of the car if plaintiff truthfully testified when he said he saw a street car coming with great speed on the track he was attempting to cross when he was close to it, that he immediately tried to stop the automobile, that he could do so in two or three feet, and that was the last he remembered; and hence the testimony of the other witness that the steps of the car struck the wheel of the automobile and his conclusion that the automobile was in front of the car cannot be reconciled, and hence the court would have been justified in taking the case from the jury on the theory that it was the automobile that ran against the car, and not the car that ran against the automobile.

5. ————: Contributory: Not Looking. Plaintiff testified that he stopped his automobile twenty-five feet south of the car line to permit a west-bound car on the north track to pass; that he then looked both ways and saw no cars approaching, and without looking again he moved his automobile forward, and when he was close to the track he saw an east-bound car coming at a high rate of speed; that he knew the time was midday, on a busy street; that he could have stopped the automobile in two or three feet, and that the view was unobstructed, and he could have seen the car at least one hundred and fifty feet away. Held, that he was guilty of such contributory negligence as bars his recovery.

Appeal from St. Louis City Circuit Court.—*Hon. C. Orrick Bishop,* Judge.

AFFIRMED.

*Chas. L. & Phillips Moss* for appellant.

(1) Before a court is authorized to sustain a demurrer to the evidence because of its insufficiency, it must appear that, admitting all the evidence introduced by plaintiff to be absolutely true and giving him the benefit of every reasonable inference to be deduced therefrom, he is not entitled to recover; and in applying this rule to the facts proven by plaintiff,

it must be remembered that negligence is not a fact which is subject to direct proof but an inference from facts put in evidence. Baird v. Railroad, 146 Mo. 265; Hollweg v. Tel. Co., 195 Mo. 149; Pauck v. St. Louis, Etc., Co., 159 Mo. 475; Bender v. Railroad, 137 Mo. 240; Noeninger v. Vogt, 88 Mo. 589; Harris v. Railroad, 89 Mo. 233; Barth v. Railroad, 142 Mo. 548; Young v. Webb City, 150 Mo. 333. (2) A court is not at liberty, in passing on a demurrer to the evidence, to make any inferences of fact in favor of defendant to overthrow either presumptions of law or inferences of fact in favor of plaintiff. Frick v. Railroad, 75 Mo. 595; Buesching v. Gas Light Co., 73 Mo. 231; Wilson v. Board of Ed., 63 Mo. 137; Hamman v. C. & C. Co., 156 Mo. 232. (3) "Where the evidence of contributory negligence is not clear, definite and certain, it is improper for the court to sustain a demurrer to the evidence." Drain v. Railroad, 86 Mo. 574; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 199; Eckhard v. Railroad, 190 Mo. 593.

*Boyle & Priest* and *T. M. Pierce* for respondent.

(1.) Plaintiff was guilty of concurring and contributory negligence. A person who waits in a position of safety until one car passes, and then, without further looking or listening, goes upon the track and is struck by another car, is guilty of such negligence as will prevent a recovery. Boring v. Railroad, 194 Mo. 541; Sanguinette v. Railroad, 196 Mo. 494; Petty v. Railroad, 179 Mo. 466. It is true that the proof shows municipal ordinances were being violated, yet the negligence of the plaintiff defeats his right to recover. Green v. Railroad, 192 Mo. 131; Stotler v. Railroad, 204 Mo. 639. (2) Counsel for plaintiff seem to pin their faith upon the proposition that where a person draws near a railroad crossing in a city, and observes an engine approaching and relies upon a presumption

that the speed ordinance will be observed, and attempts to cross in front of the engine, he is not guilty of contributory negligence, as a matter of law, but the question is for the jury. That is not the law. Hutchinson v. Railroad, 161 Mo. 254; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 180; Sullivan v. Railroad, 117 Mo. 214; Mockowick v. Railroad, 196 Mo. 571. Under the facts now before the court, there was no showing by plaintiff, who testified in his own behalf, that he relied upon the observance of any municipal ordinance by defendant, and consequently plaintiff is not now entitled to any presumptions.

VALLIANT, J.—Plaintiff riding in his automobile, going north on Twenty-third street crossing Olive street, was injured in a collision between his automobile and a street car of defendant; he sues for $6,000 damages, alleging that the accident occurred through the negligence of the defendant. The petition is in two counts, the first, based on common law negligence, alleging that the car was being run "at a great and dangerous rate of speed" and no gong or other warning of its approach, the second, based on the Vigilant Watch Ordinance and an ordinance limiting the speed of street cars at that point to ten miles an hour, alleging that the car was going beyond that limit of speed and that the vigilant watch was not kept. The answer was a general denial, and a plea of contributory negligence.

At the close of the plaintiff's evidence the court, at the request of the defendant, gave an instruction to the effect that the plaintiff was not entitled to recover, whereupon the plaintiff took a nonsuit with leave, and his motion to set the nonsuit aside having been overruled took this appeal.

Plaintiff's evidence tended to show as follows: Twenty-third street runs north and south; it crosses Olive street at right angles. Defendant has a double-

track street railway on Olive street, the north track is for cars going west, the south for those going east. The ordinance limits the speed of cars at that point to ten miles an hour. The plaintiff was alone in his automobile, operating it himself; he was going north on Twenty-third street, aiming to cross Olive and go beyond; it was about noon on the 22d July, 1905. As he approached Olive street he saw a car coming from the east and he stopped his machine until it passed; that car was on the north track going west; the point where plaintiff stopped his vehicle to let the west-bound car go by was, according to his estimate, about twenty-five feet south of the south or east-bound track and near the east side of Twenty-third street. After that car passed, plaintiff testified, he looked both ways up and down Olive street and seeing no other car he moved forward "and when I came close to the track I saw a car coming down at a great rate of speed right on me. . . . I pulled off my clutch, and broke my machine down as quick as I could; and that is the last thing I remember of doing." When he recovered consciousness he was in St. John's Hospital, which was very near the scene of the accident. The testimony of the plaintiff himself will be referred to later and more in detail.

As to the sounding of the gong the testimony was that the witnesses did not recollect that it was sounded, though no one said that he paid any attention to it, Dr. Biernbaum who was standing on the front platform of the car and in a better position than either of the other witnesses to speak on that point said: "I don't remember exactly whether he was ringing the bell or not." Little, if any, importance however is attached to this point in the briefs.

On the question of the speed of the car there were four witnesses. One, Dr. Biernbaum above mentioned, who was standing on the front platform and was therefore in a better position to judge of the speed

of the car than either of the others, said he had no recollection of how fast it was going. Dr. Saraghan's testimony will be referred to later. Dr. Cooley was standing on the west side of Twenty-third street, about half way between the alley and Olive street; having first testified that he had lived in the city twelve years and had habitually ridden on street cars, was asked if he could give an estimate of the rate of speed at which this car was going, said: "Well, I could not say how many miles it was going." Again asked if his experience on street cars made him familiar with their speed he said: "Yes, I should say it is, so much as I have ridden on them." Then asked his opinion as to the proximate speed of this car said it was about twelve or fourteen miles an hour. Dr. Dillon was a passenger standing on the rear platform of the car, had the usual experience of a city man travelling on street cars, he gave it as his opinion that the car was going seventeen to twenty miles an hour. On cross-examination he said "unusually rapid." When asked if he noticed a checking of the speed just before the collision he said he would not say, because he was in the midst of a conversation and did not notice.

Mr. Gruner, also a passenger, had boarded the car at Jefferson avenue, which is one block west of Twenty-third street; he entered by way of the rear platform and made his way through the car to a seat at the front end and was about to sit down when the collision came; from that circumstance he was of the opinion that the car was going eighteen or twenty miles an hour. The testimony also showed that immediately after the accident the car stopped with the rear end a few feet east of the west building line of Twenty-third street, which was the usual place of stopping, and the automobile was near the southeast corner of the street with its front end turned toward the east, and about four feet from the rear platform of the car. The witness Gruner was asked to state the

point of collision: "Was it near the center of Twenty-third street, was it on the west side of Twenty-third street or was it on the east side of Twenty-third street? A. The front part of the car struck the automobile just about parallel with the curbing on the east side of Twenty-third street."

On the question of whether it was the car that struck the automobile or the automobile struck the car, the testimony was substantially as follows:

The plaintiff himself testified: "I looked both ways to see if there was another car in sight and seeing none, I started up, and when I came close to the track, I saw a car coming down at great speed right on me. . . . I pulled off my clutch and broke my machine down as quick as I could and that is the last thing I remember of doing."

Dr. Biernbaum was asked by plaintiff's attorney: "Will you state whether or not the front platform of this car struck the automobile? A. I imagine—(objection). Q. Just state what you saw? A. I saw the steps hit the front wheel of the automobile. Q. The steps leading to the front platform of the car? A. That is it. Q. Will you state what position that automobile was in at the time it was struck? A. The automobile was in front of the car, on the east side, because when I jumped up, I saw the gentleman turn from his automobile and I jumped over the front platform to this gentleman, and when I jumped off he was lying under the automobile and the automobile was going from the west with the front wheels on the east side, so we took him from under the automobile into the saloon. Q. What I want to bring out is this point: you have stated that the steps of the front platform of the car struck the automobile? A. Yes, sir. Q. What portion of the automobile did they strike? A. The front wheels of the automobile on the west side." On cross-examination he said he only had a

glance at the automobile before the collision and he jumped off immediately. Dr. Cooley could not see the contact from where he stood, nor could Dr. Dillon. Mr. Gruner in his direct examination testified: ''The front part of the car struck the automobile.'' On cross-examination he said that he passed from the rear to the front part of the car and was just in the act of taking a seat when the crash occurred. ''Q. Then you saw the automobile coming, didn't you? A. Just at that time the crash occurred. Q. Just as you turned around the automobile and the car came in collision? A. The car and automobile came together, yes, sir. Q. And the automobile hit on the south side of the car, right up near the front, didn't it, near the step on the front platform? A. Yes; the car hit the automobile, the front part of the car near the step.''

On the question of the plaintiff's contributory negligence his own evidence was to the following effect. He owned the automobile and understood its appliances and how it worked; when running eight miles an hour, the limit of the ordinance speed, he could stop it in two or three feet; as he approached Olive street he heard the bell of a street car and stopped his machine, he then looked both east and west, saw a car coming from the east and waited until it passed; he knew that the Olive street line was one of the busiest in the city and he knew that he might expect a car from the west as well as one from the east; the point where he stopped his machine was near the east side of Twenty-third street, about twenty-five feet south of the south track of the street railroad; it was about noon and a clear day; from where he was he could see up and down Olive street in each direction ''quite a distance.'' ''I think I could see about one hundred and fifty feet; that would be my judgment, that it was about one hundred and fifty feet west on the tracks. . . . Q. You waited until that car.

passed and then you started up? A. Yes, sir. Q. After you had gotten into Olive street did you look again for a car before you had gotten to within about two feet of the track? A. Well, the only thing I remember now is, when I got near the Olive Street line, this car came right down on me, and I was not paying attention in my mind whether I was going to meet that car or not when I pulled my clutch off. Q. Until you had gotten in to about two feet of the east-bound track you did not see the east-bound car? A. I was probably that close. . . . Q. You could have seen that car coming if you had looked? A. I didn't see it coming. Q. But you didn't look when you were at the south line of Olive street, did you? A. I don't remember; I looked both ways, just the time I looked I am not positive, I know I looked when I started up. Q. You don't remember looking again until you were within about two or three feet of the track? A. No; I was pretty close to the track before I discovered the car coming down.'' He testified that at the rate of speed he was going in his automobile when he started up after the stop he could have stopped in two or three feet.

The question is, did the court err in giving the instruction in the nature of a demurrer to the evidence?

That question includes three questions: was the defendant guilty of negligence; was it the defendant's car that struck the automobile or the automobile that struck the car; was the plaintiff guilty of negligence that caused or contributed to the accident?

I. *a.* The allegation in the petition that the gong was not rung deserves but little attention and is not relied on by plaintiff in his brief. There was no city ordinance, so far as the evidence shows, requiring the gong to be rung, therefore it was not negligence *per se* if defendant failed to sound it. It has been fre-

quently held that testimony of witnesses who were in position to hear and under circumstances that showed they would have been likely to have heard the signal if it had been given, but who testified that they heard none, was evidence to be considered on the question of whether the warning signal was given, although it was negative evidence. But the testimony of these witnesses can hardly be said to have reached the point where testimony of that kind has been allowed. Not one of the witnesses gave the subject of the gong a thought, the farthest that they would go was to say that they did not recollect to have heard the gong.

b. If there was any evidence tending to show that defendant was negligent it was that relating to the speed of the car and that was of very unreliable character, unreliable, not in the sense of impeaching the veracity of the witnesses, but in their lack of opportunity and ability to form a judgment of the matter. The testimony varied in the estimates from 12 to 20 miles (which of itself impairs confidence in its correctness), one witness being no more competent to judge than another and their opinions formed under exciting circumstances. The ordinance allowed the car to go at the rate of ten miles an hour; what casual observer could measure the difference in speed between ten and twelve miles? Dr. Biernbaum was sitting in the front vestibule or platform and if there had been anything unusual in the speed of the car, he was in a better position to notice it than the other witnesses, yet he did not notice the speed. Dr. Straghan was on the rear platform talking to Dr. Dillon; he was asked if he noticed the speed of the car and answered, "Yes, sir, I do remember. The car seemed to be going a little—," then he was interrupted. Then questioned as to his ability to judge of the speed he said: "I cannot tell you in regard to the time it is making or the number of miles per hour. However I have a pretty good idea whether they are going un

usually fast or not." But the witness was pressed to make an estimate of miles per hour, and on objection by defendant on the ground that the witness had already declared his inability to do so the court said: "The appellate court has given most anybody the privilege to give a guess on that point, and he may give his guess." Then the witness said eighteen or twenty miles an hour. That ruling was wrong; the courts have never required a very high degree of experience to enable a witness to give his opinion on such a matter, but when the witness disclaims ability to form an opinion he should not be told that he may guess for an answer.

Dr. Dillon gave it as his opinion that the car was going seventeen or twenty miles an hour. But these two gentlemen were talking together and when Dr. Dillon was asked if he noticed a slackening of the speed when Twenty-third street was reached said he was engaged in conversation and did not notice.

The only other witness who spoke on the subject calculated that the car was going eighteen or twenty miles an hour from the fact that he had boarded the car at Jefferson avenue, entering by the rear platform, and had passed on to the front and was about to take a seat in that end of the car when the collision came. The car had traveled from Jefferson avenue to Twenty-third street, a distance of one block, while this witness was making his way from the rear platform to the front of the car. The trouble about that calculation is that we do not know how long it took the witness to make his way from one end to the other of a street car under full way. Opinion testimony of non-experts on that subject is not generally esteemed of a high order, and the testimony of the plaintiff's witnesses on this point was of the weakest of that kind of testimony. Against that opinion evidence is the physical fact that the car stopped within a few feet of the point of collision and at its usual place for stop-

ping. The collision occurred near the east line of Twenty-third street produced north until it would cross the railroad track, and the car stopped within about 15 feet of that point. If it had been going at the rate of speed some of the witnesses estimated and had struck the automobile with force enough to bring the car to a sudden stop within the space it did stop, we would doubtless have heard in the evidence of a shake-up of the passengers, but no one spoke of such a consequence, and the automobile was only turned with its front to the east. We cannot say there was no evidence at all to take the case to the jury on the question of the speed of the car being in excess of the ordinance limit, if the plaintiff's evidence otherwise made out a case for the jury, because primarily it is the province of the jury to weigh the evidence, but this evidence is so vague and unsatisfactory that if the case had gone to the jury on that question and a verdict had been rendered for the plaintiff, the trial judge would not have hesitated to set it aside.

II. Did the car run against the automobile or was it the automobile that ran against the car?

The plaintiff was rendered unconscious in the collision, but he was not unconscious up to the point of actual contact between his automobile and the car and he tells how it was up to that time; he said: "I started my machine up, and when I came close to the track, I saw a car coming down at a great rate of speed right on me. . . . I pulled off my clutch, and broke my machine down as quick as I could, and that is the last thing I remember of doing." By that testimony we understand that when he discovered the danger he used all the means at his hand to stop his machine as quickly as possible; he does not give us to understand that he endeavored to escape by turning to the right or left, he was going north and

he applied his brakes to stop and that is the last he recollects. He said that going as he was then going he could have stopped his automobile in two or three feet, and when he saw the car he applied every means to stop as soon as possible. If that is so, then his automobile did not get in front of the car. The point of contact specified by the witnesses between the two vehicles was the steps on the south side of the front platform of the car and the left hand front wheel of the automobile. How could the steps on the side of the car strike the wheel of the automobile if the automobile was in front of the car? It is easy to see how, if the automobile struck the front steps of the car, the momentum of the car would have a tendency to throw the front of the automobile towards the east, the direction in which the car was moving, and that would bring the front wheel on that side of the automobile in contact with the steps of the car, and that is just the physical situation as the witness described it. Dr. Biernbaum said: "I saw the steps hit the front wheel of the automobile." But plaintiff's attorney, seeming to appreciate that that fact needed explanation, asked the witness where the automobile was at that instant and he said it was in front of the car, "because when I jumped up I saw the gentleman turn from his automobile and I jumped over the platform to this gentleman," etc. Evidently the witness was not undertaking to say that he saw the automobile in front of the car at the instant of the contact, but was arguing that it must have been so because of the situation when he jumped over the platform and went to the relief of the injured man. He said "because when I jumped up I saw," etc.; it was the crash that caused him to jump up and what he said he saw was what he saw after he had jumped up. His conduct showed that when he saw the man in distress all the noble instincts of the physician were aroused

in him and his absorbing thought was to render relief to the suffering man.

Mr. Gruner's testimony on this point was not clear. He first said the front part of the car struck the automobile; "front part" is somewhat indefinite. In his cross-examination he said that just as he turned to sit down the crash came, he had not seen the automobile until in that instant. "Q. And the automobile hit on the south side of the car, right up near the front, didn't it, near the steps on the front platform? A. Yes, the car hit the automobile the front part of the car near the steps." So although the witness was trying hard to say that the car hit the automobile, and did say so, yet when required to specify how it struck he said the steps of the car which were on its side near its front struck the automobile.

While considering a plaintiff's evidence from the standpoint of a demurrer he is entitled to every inference that can fairly be drawn from it in his favor, yet he is not entitled to a mere conclusion that a witness may draw when the facts stated show that the conclusion is without any reason. It was physically impossible for the steps of the car to have struck the automobile if the automobile was in front of the car, and it was impossible for the automobile to have got in front of the car if what the plaintiff said was correct. The trial judge would have been justified in taking this case from the jury on the theory that it was not the car that ran against the automobile but the automobile ran against the car.

III. But even if the accident had been caused by the defendant's negligence as alleged, the plaintiff was guilty of such contributory negligence as to preclude his recovery. From the point where he says he stopped his automobile to allow the west-bound car to pass and from which point he says he looked up and down Olive street, east and west, he said he

could see for a distance of one hundred and fifty feet on Olive street each way. That point was twenty-five feet south of the south track. After that car passed he started forward, he looked each way just as he started, but did not look again. After he had started and crossed the south line of Olive street there was nothing to obstruct his view east or west, and he testified that if he had looked west he would have seen that car coming, but that he did not look. Asked if he looked after he got into Olive street he said: "Well, the only thing I remember now is, when I got near the Olive Street line this car came right down on me and I was not paying attention in my mind whether I was going to meet that car or not, when I pulled my clutch off." He also testified that at the rate of speed he was going he could have stopped his machine in three feet at least. While the plaintiff was being cross-examined as to the distance he could have seen east or west on Olive street after he had crossed the south line of the street, the counsel for plaintiff interrupted the cross-examination and said that it was admitted that there were no obstructions to view. A photograph which was shown him on cross-examination and which he said was correct showed a street car at Jefferson avenue in plain view from the point where he had stopped at the southeast corner of Twenty-third and Olive streets, and the photograph also shows that but for the car there was a clear view farther west in Olive street. The plaintiff's vision was therefore not limited to one hundred and fifty feet but as much farther as the eye could reach. Plaintiff also testified that he knew that the Olive street line of cars was one of the busiest in the city and cars were to be expected coming east or west at any time, yet he moved on without looking, and not until he was within two feet of the track, as he said, did he see the car. Plaintiff has only his own thoughtlessness to blame for his injury.

The judgment is affirmed.    *Lamm, P. J.,* and *Graves, J.,* concur; *Woodson, J.,* concurs in paragraph III and in the result, and dissents as to the other paragraphs.