MOLLY KNORP v. GUY A. THOMPSON, TRUSTEE OF THE MISSOURI PACIFIC RAILROAD COMPANY, Appellant.—No. 40482.—212 S. W. (2d) 584.

Court en Banc, June 14, 1948

*Thomas J. Cole, James A. Potter, Leon P. Embry* and *Forrest P. Carson* for appellant.

· *Fred Wesner, Guy W. Green* and *Trusty & Pugh* for respondent.

[585] DOUGLAS, P. J.—Plaintiff has sued because of the wrongful death of her husband who was killed when a Missouri Pacific train operated by defendant trustee struck the truck in which he was riding at Elkhorn crossing, about one-half mile west of California, Missouri. She recovered judgment for $4,000. Defendant appealed to the Kansas City Court of Appeals which affirmed the judgment on the strength of the decision of this court in a companion case (Hutchison v. Thompson, infra), but transferred the case here ·for a reexamination of the issues of law as authorized by Article V, · Section 10 of the Constitution on 1945.

This case and its companion have been in both the court of appeals · and this court before, so we need not set out all the facts in detail. ·For a complete recitation of them see Knorp v. Thompson (Mo. ·App.), 167 S. W. (2d) 105; 352 Mo. 44, 175 S. W. (2d) 889; and Hutchison v. Thompson (Mo. App.), 167 S. W. (2d) 96; (Mo. Sup.), 175 S. W. (2d) 903.

■ The case was submitted to the jury under the humanitarian . doctrine on the issue of warning. This issue as framed was not the · ·familiar, simple one whether or not a whistle was sounded, but went · farther and detailed the very manner in which the whistle should have been sounded. The jury was instructed it was the duty of defendant to give a warning by sounding "emergency or short blasts of the whistle" even though a crossing warning was then being given by whistle. In effect by such an instruction the court would announce a rule that a crossing warning being given by whistle is not sufficient, but should be interrupted so that an emergency warning could be sounded by the whistle. In the Hutchison case (175 S. W. (2d)

903) this court did say: "If the crossing [586] warnings are not sounded, or if sounded are ineffective, emergency warnings, short rapid blasts, should be given," relying on Bebout v. Kurn, 348 Mo. 501, 154 S. W. (2d) 120.

The Bebout case was submitted on defendant's failure to sound emergency warnings, or "short toots" of the whistle; defendant claiming that the usual crossing warning was continuously sounded up to the time of the collision, that is "two longs and a short and a long whistle." In considering this issue we said: "Appellants say emergency warning signals would have done no good, and therefore the failure to give them was not a proximate cause of the casualty. This contention is based mainly on the theory that the crossing signals sounded continuously over nearly 160 rods were just as good, citing Blackwell v. U. P. R. Co., 331 Mo. 34, 42, 52 S. W. (2d) 814, 816(3). But as we have said, there was substantial evidence that the latter were not given, and if the jury so found then the emergency signals were all the more necessary."

Thus, the essential issue in both the Hutchison and Bebout cases was whether or not *any* warning whistle was given, and we held in both cases a prima facie case for the jury was made on this issue. In the Bebout case there was testimony of witnesses, including the conductor of the train, that they heard no whistle of any kind sounded.

The record in the Bebout case showed that an "emergency" warning by whistle would be no louder and would make no more noise than the customary crossing warning by whistle.

We do not believe that even the humanitarian doctrine requires a specific type of warning to be sounded on the whistle. The most it requires is the sounding of the whistle in some sufficient manner if other warnings, such as by bell, lantern, or otherwise, are not sufficient under the circumstances. It is the use of the whistle, not the manner of its use, which is required. If the Bebout and Hutchison cases hold otherwise, they should not be followed.

The issue whether an "emergency" warning was required instead of the usual crossing warning was considered in Camp v. Kurn, 235 Mo. App. 109, 142 S. W. (2d) 772, and the court appropriately said: "There is little or no conflict in the evidence. It is undisputed that as the train approached the crossing where the collision is alleged to have occurred, the bell was ringing, the station whistle was sounded, followed by the usual crossing signal, which continued up until the train hit the truck. It is a matter of common knowledge that a crossing whistle is a warning to pedestrians and drivers of vehicles of an approaching train and that they should remain off of and away from such crossing until the train has passed over and cleared same. The very object and purpose of the crossing whistle is to warn traffic of every kind that a train is about to pass over such crossing and the

dangers incident thereto. Such whistle was sufficient warning . . ."

This court said in Zumwalt v. C. & A. R. Co. (Mo.), 266 S. W. 717 that we had often held that enginemen must give an "emergency whistle" if by due care they can do so to warn "travelers in peril approaching a public crossing", citing a number of cases. But an examination of the cases cited discloses that we did not intend to prescribe the manner in which the whistle should be sounded such as by giving repeated sharp toots. We meant only the whistle should be used. For instance, in Logan v. C. B. & Q. R. Co., 300 Mo. 611, 254 S. W. 706 the evidence showed the whistle had been sounded for a previous street crossing in the City of Hannibal and had stopped blowing before reaching the crossing where the collision occurred and no further warning by whistle was given. There was some testimony about an automatic signal bell at that crossing but the court held that the railroad was "duty bound to give him [plaintiff] an emergency whistle or apply the emergency brake to slacken or stop the train. . ." And in Dutcher v. Wabash R. Co., 241 Mo. 137, 145 S. W. 63 we pointed out the means at hand for preventing injury by a train were "bell, whistle and ability to stop. In some cases the monotonous stroke of the bell might be due care. In others, easily put, the alarm whistle timely used might be due care." By the [587] use of the term "alarm whistle" we did not intend to prescribe the precise manner in which the whistle must be sounded but must have meant that since the whistle is louder than the bell due care under the circumstances of that case might require the whistle to be sounded instead of the bell. Again, in Rollison v. Wabash R. Co., 252 Mo. 525, 160 S. W. 995, we followed the same reasoning. There the court pointed out that the statute required a warning at a crossing by either bell or whistle, not by both. But under the humanitarian rule, and conceding in that case the bell was used, the court said: "It may be laid down as the rule in this jurisdiction, that, shifting and measured by circumstances, the duty to alarm with the whistle, when the monotonous stroke of the bell is plainly ineffective, as here . . . is an essential part and parcel of due care and of the humanity rule."

We observe that Section 5213 R. S. 1939, Mo. R. S. A. in requiring a crossing signal by bell or whistle does not attempt to set out the manner in which the whistle should be sounded. Hyder v. Chicago, M. & St. P. Ry. Co., 219 Mo. App. 465, 275 S. W. 977, held the "stock alarm" whistle was not required by the statute.

We do not believe it is the province of the court to declare as a rule of law the exact manner in which a whistle must be sounded in order to comply with the duty of exercising due care to warn. Even if such was within our province, how could we properly do so without the testimony of technical experts as to the effect of the various ways

of sounding a whistle upon human hearing? A sufficient warning under the circumstances is all that is required.

Ordinarily the sufficiency of the warning under the circumstances of each case would be a jury question. However, in this case since the only substantial evidence on that issue shows that the customary crossing warning by whistle was timely commenced, and was continued and was being sounded up to and even over the crossing, we find as a matter of law such warning was sufficient under the circumstances here. It is contended that the fireman, who from his side of the cab saw the truck approaching the crossing, should have sounded a warning whistle. But it was impossible for the fireman to sound the whistle because the engineer had preempted the use of the whistle and was blowing it all the way to the crossing.

We hold plaintiff's instruction in this case specifically requiring an "emergency or short blasts of the whistle" placed an improper burden on defendant. The instruction was erroneous in attempting to fix as a matter of law the exact manner in which the whistle should have been sounded in order to meet the requirement of exercising due care to give a sufficient warning under the circumstances.

Whether or not a whistle warning of any kind was sounded has been a strongly controverted issue in this case and its companion, the Hutchison case. In the latter we ruled the evidence was sufficient to take the case to the jury on that issue. If the evidence in this case is just the same, we should follow that ruling. But we find the evidence in this case is not the same, is not substantial, and does not make a submissible case on the issue of warning.

In the Hutchison case plaintiff's witness Ehlert testified he had driven over the crossing just ahead of the truck which was struck; that he then saw the train a quarter of a mile or better away; that he turned west on Highway 50 which runs parallel to the railroad track and about 80 feet from it; and that he proceeded 250 feet in the direction of the train, pulled over to the shoulder and stopped. He testified he did not hear the train whistle. He also testified in that case that as he was travelling over the crossing he was not paying any attention and was preoccupied with the thought of business, but presently he turned his attention to the occupants of the truck and looked back to see how they were progressing. Since he became attentive to the situation before the collision occurred we held his testimony made a prima facie case on the issue of warning.

In the instant case the same witness repeated this testimony on direct examination. Yet on cross examination he stated not only that he did not remember hearing any whistle but he did not hear any noise [588] of the train as it passed him, and did not hear the sound of the collision with the truck; that he was paying no attention to whether or not the train whistled; that he was in such a state of excitement he did not remember whether the train whistled or not.

In these circumstances the witness' testimony on direct examination is not substantial evidence that no whistle warning was sounded.

Where it is shown that a witness was in close proximity to the track, in a position or situation to have heard the whistle if it was sounded, and was attentive to whether the whistle was in fact sounded, then his testimony that he heard no whistle is substantial evidence of the fact that no whistle was sounded, and it serves to contradict positive evidence to the contrary. In other words, the ultimate fact in such a situation is one for the jury to determine. See Stotler v. C. & A. R. Co., 200 Mo. 107, 98 S. W. 509; Connole v. I. C. R. Co. (Mo. App.) 21 S. W. (2d) 910; Dodd v. Terminal R. Assn. (Mo. App.), 108 S. W. (2d) 982; and the exhaustive annotation in 162 A. L. R. 9.

However in this case the only testimony that the whistle was not sounded was given by a witness who admitted he paid no attention to whether a whistle was sounded, who could not remember whether or not is was sounded, and who could not recall even hearing the sound of the train passing by at 65 miles an hour, and who heard no sound from the collision. Clearly this character of testimony has no probative value and presents no issue of fact. See McCreery v. United Railways Co., 221 Mo. 18, 120 S. W. 24. Plaintiff also used the fireman as her witness and he testified that the customary crossing warning by whistle was commenced at the whistling post a quarter of a mile from the crossing and continued being sounded up to the time of the collision.

Thus all the substantial evidence on the issue of warning shows that a sufficient warning was given. Since failure to give a sufficient warning was the only charge of negligence in the case and was not proved, the case should not have been submitted to the jury.

Judgment *reversed*.

The foregoing opinion by DOUGLAS, J., in Division One, is adopted as the opinion of the Court en Banc. *Conkling*, *Clark* and *Hyde*, *JJ.*, and *Leedy*, *C. J.*, concur: *Ellison*, *J.*, dissents in separate opinion; *Tipton*, *J.*, not sitting.

ELLISON, J. (dissenting).— ██ I respectfully dissent from the holding of the principal opinion that a statutory crossing signal made by sounding a locomotive whistle is a valid substitute for emergency or alarm signals when the enginemen see a traveler on a public road exposing himself to peril by attempting to cross a railroad track in front of an oncoming locomotive, especially where he is apparently oblivious of the approach thereof. It may be the statutory crossing signal such as was given in this instance was sufficient if sounded clear up to the crossing, though I doubt that unless it clearly appeared that the injured party was so close he could not have failed to hear and understand it. But to lay down such a *general* rule is error in

my opinion, and in conflict with all the decisions that have considered the question.

In the first place, the statute, Sec. 5213, R. S. 1939-Mo. R. S. A., provides alternative methods of giving such crossing signals: (1) the engine bell may be kept ringing for 80 rods until the engine has crossed the highway; (2) or the whistle may be sounded for the same distance, but only at intervals of unspecified duration, and such an interval may be the last step in the operation. In other words the whistle need not be sounding while the engine closely approaches and crosses the highway. Furthermore, while such signals are warnings, they are not alarm or distress signals. They must be given regardless of whether any one is at the crossing. On the other hand alarm signals not only apprise the traveler of the approach of the locomotive, but also inform him that the enginemen (with their better knowledge of the speed of the locomotive and their ability to control it) consider his continued approach to the railroad track will imperil him. And for nearly sixty years it has been held that signals in addition [589] to those prescribed by the statute must be given if necessary to protect persons who have a right and do use the crossing space in common with the railroad. Burger v. Mo. Pac. Ry. Co., 112 Mo. 238, 246(3), 20 S. W. 439, 440(2), 34 A. S. R. 379.

I think it may be affirmed, as a matter of common knowledge that the customary statutory crossing whistle signal is two long and two short blasts over a distance of 80 rods, whereas the customary alarm, or danger, or emergency signal is short successive blasts. This is shown by a number of our decisions.[1] Thus, in the *Hinzeman* case just cited below it was held that *both* the bell and whistle must be sounded where a human being is imperiled at a highway crossing, the opinion adding: "The blowing of a locomotive whistle is the ordinary and usual means of giving a sharp alarm, . . . The monotonous stroke of a bell may be one thing; the incisive, ear-splitting scream of a whistle, a signal known to man and beast as performing the office of an 'alarm signal,' is another. Under given circumstances, a bell might suffice—under other circumstances, a whistle is ordinary care." This language is quoted or adopted in a number of subsequent decisions.

In the *Dutcher* case it was conceded the locomotive had given the usual crossing signal by whistle, and there was a dispute as to "the time and extent of the alarm signals," and a verdict for plaintiff was

---

[1]Hinzeman v. Mo. Pac. Rd., 199 Mo. 56, 65(2), 94 S. W. 973(1); Dutcher v. Wabash Ry. Co., 241 Mo. 137, 154-5, 157-8, 145 S. W. 63, 67, 68; Rollison v. Wabash Ry. Co., 252 Mo. 525, 534, 538, 160 S. W. 994, 996, 997-8; Maginnis v. Mo. Pac. Rd., 268 Mo. 667, 674-5, 187 S. W. 1165, 1167; Murrell v. K. C., St. L. & C. Rd. Co., 279 Mo 92, 110-2(5, 6), 213 S. W. 964, 968-9; Logan v. C. B. & Q. Rd. Co., 300 Mo. 611, 622, 624-5, 627-8, 254 S. W. 705, 707, 708, 709; Zumwalt v. C. & A. Rd. Co., 266 S. W. 717, 721, 725 (6-9); Allen v. C., B. & Q. Rd. Co., 313 Mo. 42, 59, 281 S. W. 737, 741.

upheld. In the *Rollison* case the engineer testified he "gave alarm signals by blowing his whistle in three or four sharp short blasts." A verdict for the defendant railroad was upheld. In the *Maginnis* case the engineer gave the statutory crossing signal and when within 40 to 70 feet from the crossing gave the alarm signal or warning but the court concluded they were not sounded soon enough and reinstated a verdict for plaintiff. In the *Murrell* case there was evidence that the enginemen had failed to give the statutory signal, and some to the contrary that the bell was rung and the station whistle sounded. But this court affirmed a judgment for plaintiff holding "a few sharp blows of the whistle might have arrested (the deceased's) attention," and saved his life. In the *Logan* case the engineer admitted he "did not give a succession of short whistles and emergency whistles" and another witness said "he did not hear any whistle or distress signal or shap blast or anything of that kind," but conceded the bell was ringing on the engine and that the whistle had been sounded at the last street crossing (in Hannibal). Judgment for plaintiff was affirmed.

In the *Zumwalt* case the enginemen testified (and the plaintiff denied) that they had already given the statutory crossing signals by bell and whistle—two long and two short blasts—but the opinion held the evidence indicated the enginemen were negligent in not sounding "the emergency whistle," which admittedly they did not do until too late. The opinion went on to say "We have often held that the enginemen must give an emergency whistle if by due care they can do so, if they cannot stop or slacken the train in time to avoid injuring passengers in peril approaching a public crossing." The *Allen* case quoted the Hinzeman case and modified an instruction asked by the defendant which told the jury the law did not require the engineer to sound both the bell and whistle, and that if the whistle was sounded or the bell was rung as required by the statute the railroad company had complied with the law. The court qualified the instruction by adding a clause stating, *unless* the conditions and surroundings at the crossing were such that a person of ordinary prudence in the exercise of ordinary care would have sounded both the bell and whistle. And this instruction was approved by this court.

[590] All these cases have been followed in three recent decisions: Bebout v. Kurn, 348 Mo. 501, 513-4 (4); 154 S. W. (2d) 120, 127(9); William v. Thompson (Mo. App.), 166 S. W. (2d) 785, 788(5), and Hutchison v. Thompson, 175 S. W. (2d) 903, 910(8). The Bebout and Hutchison cases both required alarm signals consisting of short blasts.

The ordinary duty of enginemen to ring the bell *or* blow the whistle is merely statutory. But *cumulative* of that they have the added common law duty of giving such additional warning, if possible, as will be adequate in the exercise of reasonable care after a traveler

is discovered in or apparently going into peril. Hoelzel v. C., R. I. & P. Ry. Co., 337 Mo. 61, 70(4), 85 S. W. (2d) 126, 129(5, 6). This is true in a case based on primary negligence; if based on the humanitarian doctrine the duty will not arise until after the traveler is *in* a position of imminent peril. Buehler v. Festus Merc. Co., 343 Mo. 139, 158(8), 119 S. W. (2d) 961, 970(11). But the point is that the common law duty requires *more* than the statute. Under a number of our decisions already cited—several of them written in the characteristic style of Judge Lamm—if a highway crossing signal has been ineffective a more intensive alarm or distress signal must be given. And if that is ineffective the locomotive must be slowed up or stopped if possible.

The principal opinion is largely based on Blackwell v. U. P. Rd. Co., 331 Mo. 34, 43(3), 52 S. W. (2d) 814, 816(3), which was written by Frank, J., who was also the author of the later Hoelzel decision, supra. The part of the Blackwell case relied on is that which says: "A failure to warn by a particular method would not be negligence if an adequate warning was given by some other method." But that case originated in Kansas and was decided on Kansas decisions and law—apparently the common law. If there is a bell or whistle crossing statute in that state the opinion does not show it.

The facts there were that in a crossing collision between an automobile and a backing train the injured plaintiff submitted her case on an instruction predicated solely on her innocence of contributory negligence, and the railroad's failure to give her "any signal of warning," plus the fact that such failure was the sole cause of her injuries. The railroad's evidence was that (1) an arc light illumined the crossing; (2) that the back of the train had lights; (3) that an automatic crossing bell was ringing; (4) that a watchman with a lantern was stationed there; (5) and apparently that the engine bell and whistle were being sounded. The opinion held the instruction authorizing a verdict for plaintiff solely if no "signal of warning" was given, etc., was erroneous because it was based solely on the lack of signals by *sound*, and ignored the railroad signals by *lights*, which were equally effective. It is obvious that this did not accord with Missouri law, which would not acquit the railroad of liability to avert the casualty by further efforts even if the plaintiff was not stopped by the crossing signals by sound, or light, or both (in the predicated absence of contributory negligence on her part.)

It seems to me obvious that short sharp blasts of a locomotive whistle are distinctive and more effective than an ordinary statutory crossing whistle commonly heard every day by persons near railroad crossings, and which are required by statute (in the alternative) to be sounded even when nobody is near. We all know that moving objects engage attention more than those that are still. For instance, the revolving lights on the towers along airplane routes; the blinker

or wigwag signals often installed at railroad crossings; electric advertising signs that change color, or go off and on—all these are for the purpose of capturing public attention more than lights continuously shining would do. The nearest approximation to that in sound is by breaking it into separated parts or changing the volume or pitch in such way as to relieve its monotony. The undulating whine of a siren on a fire truck or ambulance, or the intermittent blasts of a fog horn are good examples. A motorist instinctively "ponds his horn" when a collision threatens. It is, I think, not only established by our decisions but by common knowledge, that the short sharp blasts of a locomotive whistle are more effective than a commonplace crossing whistle.