Raymond J. DICKERSON, Respondent,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a corporation, Appellant.

No. 44545.

Supreme Court of Missouri.

Division No. 2.

Dec. 12, 1955.

Warner Fuller, Arnot L. Sheppard, St. Louis, for (defendant) appellant.

Morris M. Rosenthal, Charles E. Gray, St. Louis, for respondent.

EAGER, Presiding Judge.

This is a suit by respondent for damages for personal injuries sustained when a switch engine, owned and operated by appellant, ran into a truck in which he was riding with two co-employees of General Motors. A verdict was returned in plaintiff's favor for $25,000 and defendant has appealed.

The place involved was the Chevrolet plant of General Motors in St. Louis. The plant and yard were fenced and are not open to the public; all switching operations were conducted exclusively by defendant, which owned all the equipment but not the tracks. Plaintiff, whose usual occupation had been that of a hod carrier, had just gone to work at this plant as a "sweeper" and was working his third day. He was then thirty-four years old and, according to his testimony, in sound physical condition. Some time shortly prior to 6:30 p. m. on November 26, 1952, and well after dark, he and two co-employees, James Reynolds and Jesse Whitehorn, took a one and one-half ton truck from the "passenger line dock" to the "mill-dock" to load and haul away some rubbish. Reynolds drove the truck and had been assigned as a driver for the past two years; he had also driven a truck there previously "off and on" during the period of his eight-year employment. Whitehorn had worked in the plant nine years as a porter.

There were several places within the plant where roads or driveways crossed the railroad tracks; apparently the tracks were used solely for the purpose of switching and bringing in and taking out materials and finished products. The switch engines were equipped with bells and whistles. It appears that certain other crossings within the plant were protected by bells, lights or watchmen, but none of these was provided at the crossing where this collision occurred. On the way to the "mill-dock" the truck used one of the other crossings and plaintiff had never previously been over the crossing where the injury occurred.

At the crossing in question there were three railroad tracks running north and south, crossed by a concrete east and west roadway 17.5 feet wide. A "lead" track or spur curved off to the southeast from a point a little south of the crossing; this "lead" track passed a corner of the power house approximately 360 feet from the crossing. This track was known as the "Fisher" lead. The "mill-dock" was approximately fifty feet southwest of the nearest point of the crossing, and the roadway from it curved to the right approaching the crossing, so that as it straightened out, a vehicle was practically on the crossing. At the time in question there was at least one freight car on a track east of the "mill-dock" which obscured the view to the east and southeast. There was also at least one freight car, and probably more, standing on the middle track of the three tracks immediately south of the crossing in question, and extending up to a few feet (probably five to ten) from the edge of the driveway; these blocked the view to the south of one driving east.

Plaintiff and his co-employees left the "mill-dock" in the truck and proceeded to the crossing at about five miles per hour; plaintiff was on the right, Reynolds was driving and Whitehorn was in the middle. The right window was closed, the left partially open. The truck proceeded slowly across the tracks and as the cab of the truck got "past the boxcars" standing on the middle of the three tracks plaintiff saw the big light of the engine almost upon them; he shouted to the driver, but the front end of the truck was already on the last track and the engine struck the truck just back of the cab, pushing or knocking it approximately twenty-five feet and turning it over. Plaintiff had been looking forward until he cleared the boxcars. The train was traveling about twenty miles per hour, according to the only evidence thereon, which was "faster than usual."

Plaintiff testified: that he did not at any time hear any bell or whistle and did not see the beams of the headlight until he got past the boxcar; that he was not "just exactly listening," and did not remember definitely whether they were talking; he had been "just looking ahead"; he "depended"

on the driver; that the headlights of the truck were on and that he had not seen or heard the train go south previous to the collision. The driver testified: that he "always" looked for trains; that there were no lights or flagman at that crossing; that he heard no bell or whistle of a locomotive at any time and heard no train; that he did not know whether he particularly "listened" or not; that this driveway was used day and night for hauling rubbish from the mill and other material; that on prior occasions he had heard the bells and whistles of the locomotives; at one point this witness said that if he heard the sound of the train or any bell or whistle on this occasion "I don't remember"; that when plaintiff shouted, he stepped on the gas because part of his truck was already on the track where the train was; he did not recall seeing the engine go south previously. The other employee (Whitehorn) was sitting in the middle; he testified: that while at the "mill-dock" he did not hear or see any engine on those tracks; that Dickerson shouted when they were on the tracks and the driver "speeded up," but they were struck; that the box-cars obstructing the view were "pretty close" up to the driveway; that he heard no bell or whistle and when he looked around he "looked right at the engine"; that he had not previously seen the light from the engine; that he "depended" on the driver. Both Reynolds and Whitehorn testified, over objection, that they would have been able to hear a bell or whistle if such had been sounded.

A watchman of General Motors, as witness for plaintiff, testified that he was located in a tower 35–40 feet high and considerably north of the crossing; that he saw the headlight on this engine as it came around the corner of the power house (360 feet from the crossing) and heard the bell as it "came around the curve"; he did not hear any whistle. He did not testify how long the bell continued sounding and stated that he did not know; he could not see the collision, but heard it.

The defendant put on no evidence. The extent of plaintiff's injuries and other material facts will be referred to later in this opinion. The case was submitted to the jury on the issue of negligence in failing to sound a whistle or bell when approaching and entering the crossing. It will be impossible in this opinion to discuss all the cases appellant has cited. The parties will be referred to as they appeared below.

Defendant first contends that there was no duty to warn under the circumstances, and certainly no duty to warn by any particular method. Although the statute requiring specific warnings at public crossings, Section 389.990, RSMo 1949, V.A.M.S., does not apply, yet there is a common law duty to use reasonable care to avoid injury at all crossings, public or private, by warnings or otherwise. Boland v. St. Louis San F. Ry., Mo., 284 S.W. 141, 145; the statute is merely cumulative of the common law and provides the minimum requirements. Hackett v. Wabash R. R., Mo., 271 S.W.2d 573, 577; Hoelzel v. Chicago R. I. & P. Ry., 337 Mo. 61, 85 S.W.2d 126, 129–130. Also, the situation here is quite different from those involving private crossings established merely for the benefit of the landowners; here defendant was operating in this plant for the joint benefit of itself and General Motors, knowing that employees must and did frequently cross its tracks. We hold that there was a common law duty to warn. Arguendo, we may concede that any one of various methods of warning would be sufficient if actually used, though certainly the usual method is by bell or whistle. Hackett v. Wabash R. R., Mo., 271 S.W.2d 573, 577. In the present case the evidence involved the sounding, or failure to sound, of a bell or whistle and we may consider the issues as so joined, although the failure to sound a whistle was not specifically pleaded. No objection was made when evidence was offered to show the lack of a whistle and the pleadings are considered as amended. Section 509.500 RSMo 1949, V.A.M.S.

Defendant contends that no jury issue was made on the failure to ring the bell. This is based on the fact that plaintiff produced the General Motors watchman, Plessing, as a witness and he testified that

he heard the bell ringing; so, defendant says, plaintiff is bound by this affirmative testimony because there was no substantial evidence to contradict it. It would extend this opinion greatly to consider the argument in detail; briefly, its substance is that the testimony of the occupants of the car that they heard no bell is mere negative testimony and that parts of their own testimony showed inattention. The latter is based on such statements as plaintiff's that he was not "just exactly listening" and of the driver (after stating directly twice that he heard no bell or whistle) that "If I did, I don't remember." Defendant cites many cases, such as Knorp v. Thompson, (Banc), 357 Mo. 1062, 212 S.W.2d 584, 5 A.L.R.2d 103, and McCreery v. United Railways Co., 221 Mo. 18, 120 S.W. 24. The substance of the cited cases seems to be that if the ones who say they did not hear a whistle or bell were so situated or so inattentive that they would probably not have heard it, or if their evidence is otherwise incredible, then that testimony does not constitute evidence sufficiently substantial to controvert the affirmative testimony and create an issue. But if those who so testify are fairly in a position to hear, and are sufficiently attentive to hear, then their negative testimony is substantial evidence and does create an issue. Borrson v. Missouri-Kansas-Texas R. R., Mo., 161 S.W.2d 227, 231; 2 Wigmore, Evi., § 664, p. 778; Francis v. Terminal R. R. Ass'n of St. Louis, 354 Mo. 1232, 193 S.W. 2d 909, 911, 912; Scheidegger v. Thompson, Mo.App., 174 S.W.2d 216. Naturally, each case depends upon its own facts and circumstances. We do not feel that the remarks or supposed admissions relied on as detracting from the testimony of these men constitute any real contradictions of their basic testimony; reading the whole record, the statements appear to be such casual remarks as any witness might consistently make.

▇ We hold that the evidence of these witnesses was substantial evidence that no bell or whistle was sounded, thus contradicting the affirmative evidence of the ringing of the bell. See generally Murray v. St. Louis Public Service Co., Mo.App., 201

S.W.2d 775, 780. A fact issue was thus made. However, we note also that Mr. Plessing's "affirmative" evidence of the ringing of the bell was very hazy as to the location of the engine at the time,—merely when it "came around the curve"; the curve extended back at least 360 feet from the crossing. It certainly cannot be said that this was positive testimony that the bell was ringing as the engine approached the crossing.

▇ Defendant contends that the admission of testimony from the driver (Reynolds) and Whitehorn that they would have been able to hear a bell or whistle if one had been sounded was prejudicial error; that the answers were "conclusions," and that the point was highly material. We note that objections had previously been sustained to questions asking whether Reynolds had previously, while operating trucks, heard the bells and whistles of switch engines as they approached a crossing. Actually one of the answers of which defendant now complains was made before the objection and there was no motion to strike it. We prefer, however, to consider the evidence on a broader basis. The trial court admitted the evidence on the authority of Meredith v. Terminal R. R. Ass'n, Mo.App., 257 S.W.2d 221, 227, in which the St. Louis Court of Appeals specifically held a question in that precise form to be proper, citing Geers v. St. Louis Public Service Co., Mo.App., 247 S.W.2d 318, and Gillespie v. Terminal R. R. Ass'n, Mo.App., 204 S.W.2d 598. We should hesitate to convict the trial court of error under such circumstances. The Court of Appeals held that such an answer was one of fact and not a conclusion. Perhaps we need not go so far here. Not all conclusions and opinions of laymen are inadmissible. A question and answer substantially identical were held proper in Francis v. Terminal R. R. Ass'n, 354 Mo. 1232, 193 S.W.2d 909, 913. In Brawley v. Esterly, Mo., 267 S.W.2d 655, 661, 662, a truck driver was permitted to tell what certain marks on the road "looked like" to him. The court said that these were not "opinions" in a true sense, nor objectionable conclusions; they were "comprehensions"

of things such as he had previously seen and observed and that such evidence is often permitted when it is impossible or difficult to put the exact facts and circumstances into descriptive words for the jury (citing cases). And see particularly Kennedy v. Union Electric Co. of Mo. (Banc), 358 Mo. 504, 216 S.W.2d 756, 761, for a full discussion. Such evidence is occasionally described as a "short-hand" rendering of the facts. The cases cited by defendant are on different facts, such as a question asking whether the driver of a car could have done anything more to avoid an accident. Here Reynolds and Whitehorn had worked in this plant for periods of eight or nine years; Reynolds had driven trucks much of this time. It would have been virtually impossible to describe for the jury the degree of hearing of each, the amount of noise made by the truck, the loudness of the usual whistle and bell, and all the other attendant circumstances. Kennedy v. Union Electric Co. of Mo., supra. Counsel had opportunity to cross-examine these witnesses as to the basis for their answers. Perhaps some other form of question might have been preferable, as, for instance, one calling for their actual experience in the past in hearing whistles and bells under generally similar circumstances; but we are unwilling to hold that the admission of the evidence was error.

 It is next contended that plaintiff was guilty of contributory negligence as a matter of law. Defendant, of course, recognizes that no negligence of the driver is imputed to plaintiff, that plaintiff is only required to exercise ordinary care for his own safety, and that he is not held to the same "attentive vigilance" as the driver of the truck. It will be impossible to discuss defendant's many citations on this point. Contributory negligence may be established as a matter of law under certain circumstances, but only when reasonable minds could not differ as to plaintiff's negligence. Flint v. Chicago, B. & Q. R. R., 357 Mo. 215, 207 S.W.2d 474. Defendant emphasizes plaintiff's statement that he depended on the driver, and also the fact that the view was obviously obstructed and greater care was,

therefore, required. We do not think that the cited cases control the present situation. Here plaintiff was wholly unfamiliar with the crossing, whereas the driver had driven trucks in that plant for years. Under such circumstances the law recognizes the right to rely on the driver, certainly to some extent. Flint v. Chicago, B. & Q. R. R., 357 Mo. 215, 207 S.W.2d 474, 479; Boland v. St. L. S. F. Ry., Mo., 284 S.W. 141, 144 (citing authorities). We note also that other crossings in the plant had bells, lights or other signals; that this truck had traveled only 50–60 feet, and on a curve, before it was struck; that plaintiff looked forward, the only way he could effectively look, until he got past the boxcars, and then looked to his right; that this was not a main-line railroad crossing, but involved a very unusual situation; there was nothing to show that plaintiff even knew that switching was conducted at night. Perhaps the only other thing which plaintiff might have done was to insist that the driver stop, and then get out and look. Under these circumstances we hold that a submissible jury issue on contributory negligence was established, but that plaintiff was not contributorily negligent as a matter of law.

 In this same connection we mention, briefly, defendant's contention that the injuries were due to the sole cause negligence of the driver, Reynolds. The facts, as already related, refute such a contention. We hold that a submissible case was made on defendant's negligence. If such be true, certainly the court could not have taken away the right to that submission by declaring, as a matter of law, that *all* the negligence was that of the driver. Hackett v. Wabash R. R., Mo., 271 S.W.2d 573, 578. The contention is denied. Two sole cause instructions were given at defendant's request.

A point is made concerning allegedly erroneous rulings on objections made during the final arguments. We note that the only assignment in the motion for new trial which involved the question of argument was that the court erred in failing "to rebuke plaintiff's counsel" in connection with certain lines of argument. Counsel do not

brief here any such failure to "rebuke." We, therefore, give no further consideration to these contentions.

Defendant complains of Instruction No. 1 given for plaintiff. In substance, it hypothesized the physical circumstances, including the location of the cars obstructing the view to the south, that defendant knew thereof and knew that the crossing was used by motor vehicles, and then submitted that "if you further find and believe from the evidence that under the aforesaid physical surroundings and circumstances, ordinary care required the sounding of the whistle or bell of said locomotive during the period of time that said locomotive was approaching and entering upon said crossing," that defendant failed to sound either, and that "in so failing, said defendant * * * was negligent," plaintiff should recover. Defendant again argues the lack of any duty to warn. We have already ruled on that. The principal complaint is that this instruction limited defendant's permissible methods of warning to the bell or the whistle, whereas a warning could have been given by shouts, an alarm bell at the crossing, flashing lights, or the rays of the headlight. There was absolutely no evidence of the presence or use of any of these other possible means of warning except for evidence that the headlight of the engine was burning. An instruction may disregard matters not fairly in evidence; in fact, the evidence here, fairly considered, negatived the use and presence of these other possible warnings except the headlight. In the cases cited by defendant, Blackwell v. Union Pacific R. Co., 331 Mo. 34, 52 S.W.2d 814; Sprankle v. Thompson, Trustee, Mo., 243 S.W.2d 510, and Knorp v. Thompson, Trustee, (Banc), 357 Mo. 1062, 212 S.W.2d 584, 586, 587, instructions were held erroneous as ignoring other warnings which the evidence affirmatively showed were given. Throughout the evidence in the present case the issue was whether a bell or whistle had been sounded; defendant put on no evidence. Indeed, the bell and whistle are the usual warnings given by railroads. Hackett v. Wabash R. R., Mo., 271 S.W.2d 573, 577.

Plaintiff was entitled in his instruction to hypothesize his own version of the evidence since defendant had advanced no affirmative theory. Bebout v. Kurn, 348 Mo. 501, 154 S.W.2d 120, 127. If specific means of warning had not been hypothesized, defendant might well have claimed that the instruction was a "roving commission," as in Hackett v. Wabash R. R., Mo., 271 S.W.2d 573, 579. There was no evidence of the illumination generally in the area; the lights of the truck were burning, which fact would normally interfere with the visibility of other rays of light. Doyel v. Thompson, 357 Mo. 963, 211 S.W.2d 704, 707, 708. The evidence fairly shows that plaintiff did not see the rays of the headlight until the cab of the truck had passed the boxcars and then he immediately shouted to the driver.

Under this evidence we do not think plaintiff was required to include in his instruction any other type of warning. And, regardless of other possibilities, the jury was specifically required to find that the specified failure to sound a bell or whistle *was negligence* under the circumstances. Defendant did not request any affirmative instruction relieving it of liability by reason of any other type of warning. If there was sufficient evidence to sustain such, it would not seem to have conflicted with plaintiff's instruction, for thereon the jury could still have found against plaintiff on his instruction, finding at the same time that such "other" warning was sufficient. We do not think, as claimed, that this instruction assumed that the bell had stopped ringing, or indeed assumed that the bell had ever rung. We hold that the giving of this instruction was not error.

The last contention of defendant is that the verdict is excessive. Defendant cites no cases on this contention. Plaintiff was 34, and in supposedly good physical condition. The evidence indicated that his earnings had averaged approximately $3,123 for the past four years. He had just started on a new job and his wage rate there was not shown. In this collision he was "thrown around" in the cab of the truck, and immediately felt sharp shooting pains

in his lower back and right leg; he was hospitalized for X-rays, and received various examinations and treatments; he was in bed for about a month and used crutches for some months after that. He testified that up to the time of trial he always had pain in his lower back or leg and that he has frequently suffered from headaches since the accident; his right leg at times feels numb. Beginning in the summer of 1953 plaintiff did some hauling with a truck and in the fall and winter of 1953–54 he worked for a time at hod carrying. The record indicates that his earnings from the time of the accident to the time of trial (a little over sixteen months) were approximately $1,158.80; he testified, however, that the pain during and after doing the hod carrying was terrific. There was substantial, uncontradicted medical testimony, supported by findings from a myelogram, that plaintiff had sustained, by reason of this collision, a rupture of the intervertebral disc between the last lumbar vertebra and the sacrum. His physicians, one of whom was a neurosurgeon, testified that he should have an operation for the removal of the ruptured disc; the operation was described and it is one, certainly, of no slight import. One of these witnesses testified that probably 75% of such persons are improved or well after such an operation, 10% are only slightly improved and about 15% are no better or worse; the other gave somewhat more favorable figures. It was indicated, however, that plaintiff could not, even after an operation, successfully do heavy work such as hod carrying, and that in a small percentage of cases the condition recurs after the operation. The gist of all this is that there remains a substantial probability of some remaining and permanent impairment, as well as continued pain, even with an operation.

The amount of the verdict in this case seems rather liberal, but we cannot say that under all the circumstances it is so excessive as to require a remittitur. For somewhat similar cases, with perhaps more exaggerated injuries and with larger verdicts sustained, see Rucker v. Illinois Terminal R. R., Mo., 268 S.W.2d 849; Hayes v. Wabash R. R., 360 Mo. 1223, 233 S.W.2d 12; Cassano v. Atchison, T. & S. F. Ry., 362 Mo. 1207, 247 S.W.2d 786; and see particularly the very recent case of Sandifer v. Thompson, Mo., 280 S.W.2d 412. The judgment will be and is hereby affirmed.

All concur.