256 S.W.2d 779 (1953)
CHAMBERLAIN
v.
THOMPSON.
No. 43157.
Supreme Court of Missouri, Division No. 1.
March 9, 1953.
Motion for Rehearing or to Remand for New Trial Denied April 13, 1953.
Thomas J. Cole, St. Louis, M. Walker Cooper and Allen D. Churchill, Bloomfield, for appellant.
Roberts & Roberts, Farmington, for respondent.
VAN OSDOL, Commissioner.
Defendant had appealed from a $10,000 judgment entered upon verdict for plaintiff in her action for the wrongful death of her husband which occurred when the automobile the husband was driving was struck by defendant's train at the railroad crossing where the Belmont Branch of defendant's line crosses Highway W in St. Francois County.
Plaintiff's case was submitted to the jury solely on primary negligence of defendant in failing to perform defendant's statutory duty to ring a bell continuously or sound a whistle at intervals from a distance of at least eighty rods from where a railroad crosses a traveled public road or street until the engine has crossed such a thoroughfare. Section 389.990 RSMo 1949, V.A.M.S.
Defendant-appellant contends the trial court erred in overruling defendant's motions for a directed verdict. Defendant-appellant asserts that the evidence was not sufficient to make out a case for the jury, and that, as a matter of law, plaintiff's decedent was contributorily negligent. Defendant-appellant further contends that plaintiff's principal instruction was prejudicially erroneous. But, in view of our conclusion infra that the evidence tending to show defendant's negligence as submitted was insufficient to justify the submission of *780 plaintiff's case to the jury, it is not necessary to review the contentions of defendant-appellant relating to contributory negligence and error in instructing the jury.
In this case, wherein plaintiff has alleged and has relied on the statutory negligence of defendant and has submitted the issue of negligence in neither ringing the bell nor sounding the whistle in the manner and throughout the distance as required by Section 389.990, supra, plaintiff had the burden of making a prima facie showing (and the burden of proving) that, as submitted, neither of the signals was given. The railroad's duty under the statute is performed if it sounds either the bell or the whistle as, and for the distance, required by statute. Hoelzel v. Chicago, R. I. & P. Ry. Co., 337 Mo. 61, 85 S.W.2d 126; Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S.W.2d 918; Toeneboehn v. St. Louis-San Francisco R. Co., 317 Mo. 1096, 298 S.W. 795; Van Note v. Hannibal & St. J. R. Co., 70 Mo. 641.
In determining whether the evidence is sufficient to make out a case for the jury, plaintiff's evidence is considered as true and plaintiff is given the benefit of any and all reasonable inferences therefrom. Evidence in favor of defendant is disregarded; but, of course, plaintiff is given the aid of any evidence offered by defendant which is favorable to plaintiff. Nash v. Normandy State Bank, Mo.Sup., 201 S.W.2d 299; See v. Wabash R. Co., 362 Mo. 489, 242 S.W.2d 15.
Defendant's Belmont Branch line between Bismarck and Charleston crosses Highway W in a general northwest-southeast direction. Highway W from Farmington approaches the crossing from the east (from a little north of east). In order to simplify our statement of the facts, we shall consider defendant's line as if it were lying due north and south, and Highway W as if it were a due east-west highway. However, several hundred feet north of the crossing defendant's Belmont Branch line "curves" and a "whistling post" or "whistle board" is situate west of the track on this curve at a point thirteen hundred sixty-two feet north of the crossing.
Approaching the crossing from the east, Highway W passes through a cut. The crest of the embankment on either side of the cut is a little more than twelve feet higher than the surface of the highway at a point two hundred fifty feet east of the crossing. The elevation of the embankment decreases in relation to the highway surface as the highway approaches the crossing, and the surface of the embankment levels off at the crossing to the same elevation as that of the highway surface. At a point two hundred feet east of the crossing the embankment is 10.9' higher than the surface of the highway; at a point one hundred fifty feet east, 6.3' higher; and at a point one hundred feet east, 5.3' higher. The elevation or grade of the lineal surface of Highway W, approaching and arriving at the crossing from the east, declines approximately ten feet in the last two hundred fifty feet. Plaintiff introduced evidence tending to show that one seated in an automobile parked on the highway eighty-seven feet east of the crossing cannot hear the sound of a whistle or bell until the engine of a train, approaching from the north, reaches a point a "little bit" less than one hundred sixty-five feet north of the crossing. There was also evidence that one cannot hear the sound of a ringing bell when the whistle is sounding.
A little after eight o'clock in the morning of February 5, 1951, plaintiff's decedent, Marvin E. Chamberlain, driving a 1950 Tudor Ford on the way to Doe Run, approached from the east on Highway W and passed onto the crossing where the automobile was struck by the engine drawing defendant's southbound train of seventeen cars including a coach, the last car. The automobile was thrown southwestwardly into or through the railroad right-of-way fence south of Highway W.
Defendant's engineer, plaintiff's witness, testified that, leaving Bismarck and going southwardly toward Delassus (approximately one-half mile south of Highway W), the train was moving about thirty miles per hour but the train's speed was reduced to about twenty-five miles per hour at a point two hundred feet north of the crossing.
*781 When the engine was about one hundred twenty-five feet from the crossing the fireman called to the engineer, "`Hold it. There is a car coming fast.' * * * I (the engineer) had my hand on the throttle when he hollered. I immediately jammed the throttle, grabbed the brake valve and then turned the sand on." The engineer testified that he had begun to whistle for the crossing when he came in sight of the whistle board and continued the whistling all the way to the crossing, and the whistle was "still blowing wide open at the time of the impact." The bell was ringing, and was still ringing when he stopped the engine south of the crossing.
Plaintiff's witness (defendant's engineer, as stated) and witnesses for defendant (including defendant's fireman) testified that the whistle was sounding after the train approached the whistle board (over eighty rods to the northward). We shall ignore such testimony, however, and shall further examine the record in search of other evidence, substantial in character, tending to establish that neither of the statutory signals was given.
It is urged by plaintiff-respondent that the testimony of plaintiff's witness, Alonzo Stewart, was sufficient in tending to support plaintiff's case as submitted.
Alonzo Stewart, an engineer with duties underground at the mines of the St. Joseph Lead Company, was at his home about one quarter of a mile from the crossing. His house is located seven hundred feet south of Highway W and to the eastward of the crossing. Plaintiff's decedent (intending to go to Doe Run, as stated) had stopped on the highway near the home of the witness and asked the witness to "ride out to Doe Run with him." At the time the witness was on the front porch (of his house) figuring out "a bunch of flooring on it." The witness did not go with plaintiff's husband, and remained on the front porch "quite a little bit." After plaintiff's husband left and proceeded toward the crossing the witness heard "a rumbling just like a dump truck crossing the railroad track." Later that morning the witness learned that Marvin E. Chamberlain was killed; "a fellow came by and told me. Q. Mr. Stewart, tell the jury whether or not any whistle blew on that train or any bell rang. A. It did not." Defendant's counsel objected. The objection was sustained and the answer stricken. The examination continued. "Q. (by plaintiff's counsel) Mr. Stewart, do you know whether or not the whistle blew or bell rang on any train on that line that morning ? A. No, I did not."
We believe the testimony of the witness Stewart is insufficient in affording a substantial foundation for a conclusion that a statutory signal was not given. It was shown by plaintiff's witnesses that Highway W was used by trucks hauling ore from the mines at Doe Run to the mills at Flat River, and trucks frequently passed over the crossing. There was no showing that the sound, which the witness said was like that of a dump truck, was actually the sound of defendant's train involved in the collision. The witness was engaged in figuring dimensions of lumber to be used in flooring the front porch of his house, and apparently his mind was on his own task, at least to some extent. So far as the evidence shows, he had no occasion to be listening for the sound of a train. There was no showing that he was attentive or that, if he had been attentive, he could have heard the sound of a whistle or bell of a train passing along a track a quarter of a mile away and beyond the cut and embankment, which cut and embankment, according to a witness for plaintiff, had diminishing effect upon the southerly cast of sound of whistle and bell. In itself, the answer of the witness, "I did not," was not precisely responsive, and the best that could be said is that the answer was negative in the sense that the witness "did not" know because he "did not hear" a whistle or bell. We do not intend to say that negative evidence may never be of substantial probative value in supporting a factual issue. A negative fact must ordinarily be demonstrated by negative evidence; and negative evidence may be invested with positive probative force. But negative evidence, such as "I did not hear," is positive and of substantial probative force or value in a situation *782 where it is reasonably certain the witness could and would have heard, that is, where "it is shown that a witness was in close proximity to the track, in a position or situation to have heard the whistle (or bell) if it was sounded, and was attentive to whether the whistle was in fact sounded * * *." Knorp v. Thompson, 357 Mo. 1062, 212 S.W.2d 584, 588, 5 A.L.R. 2d 103; Willsie v. Thompson, 359 Mo. 775, 223 S.W.2d 458; Graves v. Atchison, T. & S. F. Ry. Co., 360 Mo. 167, 227 S.W.2d 660; Toeneboehn v. St. Louis-San Francisco R. Co., supra; Stotler v. Chicago & A. R. Co., 200 Mo. 107, 98 S.W. 509; Dodd v. Terminal R. Ass'n of St. Louis, Mo.App., 108 S.W.2d 982; Connole v. Illinois Cent. R. Co., Mo.App., 21 S.W.2d 907; Annotation, 162 A.L.R. 9. No other evidence introduced by plaintiff was substantial in tending to show a statutory warning was not given. However, it is urged that the testimony of defendant's conductor, defendant's witness, when considered in connection with the testimony of plaintiff's witness, defendant's engineer, "makes a submissible case."
Defendant's conductor testified that, as the train was moving southwardly, he "thought we were close to Delassus, and I was expecting him (the engineer) to whistle for the road crossing so that I would know to gather up my bills and know what I was doing. I heard him whistle for the crossing, and the air went into emergency, and the train came to a stop. It was my opinion that we had hit something, or we had come close to hitting. When the train stopped, the coach was just north of the crossing, and when we stepped out of the coach, practically on the highway, why, we saw a car over on the right-of-way, evidently had been hit by the train." On cross-examination the witness was asked, "Now, I believe you said that you were getting your bills ready, that you thought you were approaching Delassus, is that right? A. Yes, sir. Q. You heard the train whistle there? A. Yes, sir. Q.
And then immediately the air brakes were set? A. Yes." Plaintiff-respondent contends that, since the defendant's engineer had testified the emergency brakes and sand were applied at approximately one hundred twenty-five feet north of the crossing and the conductor testified, as stated, that he had heard the train whistle and "then immediately" the brakes were set, the conclusion may be reasonably drawn that the usual whistle for the required distance had not been sounded.
It might be argued that it would be a forced or strained conclusion that the conductor meant the whistle had not been sounded in the required manner and for the required distance before the emergency brakes were applied or that the emergency brakes were applied "immediately" in point of time after an initial sound of the whistle. And it could be urged that it is reasonable to conclude the conductor meant "immediately" in succession or sequence of events without any intervening incident. We are reminded that, in his testimony in chief, the conductor had said, "I heard him whistle for the crossing, and the air went into emergency, and the train came to a stop." Assuming the whistle was sounded as required, the eventsthe whistle for the crossing, the application of the brakes, and the impact of the collisionmust have transpired within one minute of time. However, it is unnecessary to determine the contention of the probative value of the conductor's testimony relating to the whistle, because his testimony nevertheless has no substantial value in tending to show the bell was not ringing as and for the distance required by statute.
The judgment should be reversed.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.