21 F.Supp.2d 1030 (1997)
Freda M. BRYAN, Plaintiff,
v.
NORFOLK & WESTERN RAILWAY COMPANY, Defendant/Third-Party Plaintiff,
v.
CITY OF JONESBURG AND COUNTY OF MONTGOMERY, Third-Party Defendants.
No. 4:96CV00067 LOD.
United States District Court, E.D. Missouri, Eastern Division.
July 3, 1997.
*1031 *1032 Mark E. Goodman, Sanford J. Boxerman, Rosenblum and Goldenhersh, St. Louis, MO, for Freda M. Bryan, plaintiff.
Dan H. Ball, J. Powell Carman, Associate, David A. Dick, Thompson Coburn, St. Louis, MO, for Norfolk and Western Railway Company, defendant.

ORDER AND MEMORANDUM OF UNITED STATES MAGISTRATE JUDGE
DAVIS, United States Magistrate Judge.
This case is before the undersigned United States Magistrate Judge by consent of the parties pursuant to 28 U.S.C. § 636(c). Presently before the Court is defendant Norfolk & Western Railway Company's (N & W) motion for summary judgment, its motion to compel and to produce directed to third-party defendant City of Jonesburg (City), and plaintiff Freda Bryan's motion to amend.
Plaintiff brought this wrongful death action against defendant N & W, who in turn joined defendants City and County of Montgomery (County) as third-party defendants. This suit was originally brought in state court and was removed by defendant N & W based on diversity.
Plaintiff alleges that defendant N & W owned and maintained railroad tracks and a crossing running in an east-west direction across Massas Creek Road in the City of Jonesburg, Montgomery County. Plaintiff further alleges that her spouse, Charles Bryan, was killed on March 18, 1993 while driving a truck that collided with a train owned by defendant N & W at the Massas crossing. She now sues as the surviving spouse under Missouri's Wrongful Death Statute, Mo.Rev.Stat. § 537.080, (1994).
Plaintiff alleges in her complaint that:
1. the crossing over which defendant N & W's tracks ran was "extraordinarily hazardous" in that:
a. a motorists' view of the approach of defendant N & W's trains is obstructed by terrain;
b. the approach of the train is hidden from the view of motorists; and
c. the Massas crossing is not guarded by automatic gates or flashing signals.[1]
2. defendant N & W's negligence caused the collision and the death of Mr. Bryan in five respects:
a. by failing to ring a bell, sound a horn, or blow a whistle at least 80 rods from the crossing, and to repeat the same at intervals prior to reaching the crossing so as to warn Mr. Bryan of the approach of its train in violation of Mo. Rev.Stat. § 389.990, (1994);
b. by operating its train at a speed in excess of that permitted by 49 C.F.R. § 213.9(a);
c. by failing to keep a careful lookout for the approach of motorists over the crossing;
d. in failing to adequately protect the crossing by failing to erect and maintain automatic warning lights and automatic gates with flashing light signals, or alternatively, if federal law preempts this claim, then;
e. in failing to adequately protect the crossing by failing to erect and maintain automatic gates with flashing light signals *1033 in violation of 23 C.F.R. § 646.214(b)(3).
Defendant N & W has moved for summary judgment arguing that plaintiff's negligence claims are preempted by state and federal law, refuted by the record, and that Mr. Bryan caused the accident. Defendant N & W also has filed a motion to compel and to produce directed at third-party defendant City. Rather than beginning with a recitation of the facts, the Court will discuss the relevant facts as it analyzes the merits of each claim.
In determining whether summary judgment should be issued, the facts are viewed in the light most favorable to the nonmoving party and the burden is placed on the moving party to establish the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electrical Industrial Company v. Zenith Radio Corporation, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). If the record as a whole could not lead a rational trier of fact to find for the nonmoving party, "there is no `genuine issue for trial.'" Id. at 587, 106 S.Ct. 1348.

1. Negligence

a. Violation of Mo.Rev.Stat. § 389.900 (1994)

Plaintiff alleges that defendant N & W was negligent with regard to the Massas crossing. Plaintiff first argues that defendant N & W was negligent by failing to fulfill its statutory duty to ring a bell, sound a horn, or blow a whistle at least 80 rods from the crossing, and to repeat the same at intervals prior to reaching the crossing so as to warn Mr. Bryan of the approach of its train in violation of § 389.990.
Defendant N & W argues that the depositions of David Duffield, the conductor, and Jerry O'Donnell, an engineer, establish that the train's whistle was sounded in the sequence of two long whistles, a short, then a long whistle at a distance of 3,856 feet from the crossing. Thus, defendant N & W claims that plaintiff cannot establish that it violated § 389.990.
In response, plaintiff argues that the affidavits of John and Elaine Wells, who live in a house adjacent to the railroad and less than 250 feet south of the crossing, establish a factual issue as to whether there was a violation of § 389.990. In those affidavits, Mrs. Wells states that she did not hear any horn, bell, or whistle prior to the collision, and Mr. Wells states that the only time he heard a horn, bell, or whistle was when the train was less than 100 feet east of the crossing.
In reply, defendant N & W argues that under Missouri law the Wells' statements are admissible "negative evidence" and capable of supporting an inference that the whistle did not sound only if it is reasonably certain that they were in close proximity to the track, in a position to have heard the whistle if it sounded, and were attentive to whether the whistle was in fact sounded. Defendant N & W argues that neither of the Wells' affidavits include any foundation that they were listening for a whistle or attentive in any way. Defendant N & W notes that the fact that Mr. Wells heard the whistle and his wife did not shows that she was not in a position to hear, or was not listening for, the whistle.
Defendant N & W further argues that at her deposition Mrs. Wells testified that she was not listening for a whistle, that due to living close to the tracks she has gotten used to train whistles, and that it was possible she simply did not notice it that day. Additionally, defendant N & W states that Mr. Wells testified that he was not listening for a whistle, that living in that vicinity he has gotten used to train whistles, and that the train whistle could have blown prior to the first time he heard it. Finally, defendant N & W argues that Mr. Wells stated that a minute or two passed from the time he heard the whistle until he saw the train, which was then over the Massas crossing. Thus, defendant N & W argues Mr. Wells first heard the whistle when the train was east of the crossing.
Section 389.990 states in part that:

*1034 a horn or whistle shall be attached to such engine and be sounded at least eighty rods [440 yards] from the place where the railroad shall cross at any such road or street ... and be sounded at intervals until it shall have crossed such road or street ...
As defendant N & W points out, in cases such as this, a witness's statement that he did not hear a train's whistle is of probative value only if it is shown that a witness: 1) was in close proximity to the track, 2) was in a position to have heard the whistle if sounded, and 3) was attentive to whether the whistle was in fact sounded. Chamberlain v. Thompson, 256 S.W.2d 779, 781 (Mo.1953).
Mrs. Wells' affidavit, at most, establishes that she did not hear the train whistle. It does not establish that the train whistle never blew. It also conflicts with the testimony of the train crew and her husband's affidavit. Furthermore, her deposition statements that it was possible that she simply did not hear the whistle that day and that she did not hear the train itself until after the collision fails the Chamberlain test. There simply is no showing that she was attentive to whether the whistle was in fact sounded. Ms. Wells' affidavit fails to create a genuine issue of material fact concerning whether the train blew its whistle in conformance with § 389.990.
Mr. Wells stated at his deposition that he had no particular reason to be listening for a train the morning of the collision, that living in that vicinity he had gotten use to trains, he could not tell where the train was located when he heard the train's horn for the first time, that the train could have been some distance east before he first heard it, and that the train's horn could have sounded prior to the first time he heard it. Pursuant to Chamberlain, these facts fail to show that Mr. Wells could offer any probative evidence on the issue of whether the train sounded a warning as required. There simply is no showing that he was attentive to whether the whistle was in fact sounded.
The Court also notes an inconsistency between Mr. Wells deposition testimony and his affidavit. The deposition was more detailed than his affidavit and it involved cross-examination by opposing counsel. Thus, his deposition has more indicia of reliability than his one-page affidavit. Finally, the depositions of the train crew demonstrate that defendant N & W complied with § 389.990, both as to when and how the whistle was sounded.
Therefore, defendant N & W has established the absence of a genuine issue of material fact, as a review of the record as a whole could not lead a rational trier of fact to find for plaintiff on a claim that defendant N & W failed to comply with § 389.990. Thus, defendant N & W is entitled to judgment on this claim as a matter of law. Fed.R.Civ.P. 56(c).

b. Violation of 29 C.F.R. § 213.9(a)

Plaintiff next alleges that defendant N & W's negligence caused the collision and the death of Mr. Bryan by operating its train at a speed in excess of that permitted by 49 C.F.R. § 213.9(a). Defendant argues that the claim is preempted by CSX Transportation v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).
In Easterwood, the Supreme Court ruled that if a train was travelling under the federally determined speed limit, no common law claim of excessive speed would lie. Id. at 1742-44. Exhibits tendered by defendant N & W show that the testimony of the train crew, along with the speed tapes from the engine, establish that the train was traveling at 50 miles per hour on a class 4 track at the time of the collision. The federally determined speed limit for freight trains on such a track is 60 miles per hour. 49 C.F.R. 213.9(a). Thus, pursuant to Easterwood, plaintiff's claim for excessive speed is preempted.
Plaintiff recognizes this claim is preempted and seeks leave to amend her complaint by interlineation and delete this claim. Defendant N & W opposes the amendment arguing that there is no reason to delete this claim and leave open the possibility of its later resuscitation. Although the claim is meritless, it is undisputedly preempted, and the Court finds that no prejudice would flow to any defendant by granting plaintiff's motion. The motion to amend is granted.

*1035 c. Careful Lookout

Plaintiff next alleges that defendant N & W was negligent in failing to keep a careful lookout for the approach of motorists over the crossing.
Defendant N & W argues that to support such a claim there must be evidence that the train crew saw or could have seen plaintiff in time to avoid the collision. Defendant N & W goes on to argue that the evidence, including plaintiff's expert, makes it clear that the decedent's vehicle slowly approached the Massas crossing and that it was impossible for the train crew to discern that the vehicle was not going to stop but rather proceed onto the crossing until the train was two seconds from the crossing. Thus, defendant N & W claims that at that point the train crew could not have stopped, appreciably slowed the train, or taken any action to lessen or avoid the collision.
In response, plaintiff argues that any evidence of the availability of evasive action and the failure to take such action is sufficient to warrant submitting a failure to keep a careful lookout claim to the jury. Furthermore, plaintiff claims that the Wells' affidavits create a factual issue as to whether the train's whistle sounded and that the failure to sound a warning constitutes evidence of failure to take evasive action. Plaintiff further argues such evidence creates an inference that the train crew was negligent by failing to keep a better lookout. Finally, plaintiff relies on crewman O'Donnell's deposition testimony wherein he stated that the first time he saw the decedent's vehicle was when the train was 100 feet from the crossing.
In reply, defendant N & W argues that plaintiff cannot bootstrap an alleged violation of § 389.990 into a submissible lookout claim, as both are separate theories of negligence. Defendant N & W also points out that crewman O'Donnell was on the north side of the engine, away from decedent's approach, and that he applied the emergency brake when crewman Duffield saw that the decedent was not stopping. Defendant N & W also argues that each party's expert testified that the crew could not have avoided the accident by evasive action once it became apparent that the decedent was not going to stop.
Under Missouri law, there is a primary duty on train crews to keep a lookout when a train approaches a public crossing. Baldwin v. Atchison, Topeka & Santa Fe Ry. Co., 425 S.W.2d 905, 913 (Mo.1968). If the evidence shows that there was no possibility of stopping or that slowing the train would not have done any good, only a failure to warn claim can be made, and a separate failure to keep a careful lookout claim is not justified. Id.
The Court has already found against plaintiff on her claim that the train crew failed to sound the train's whistle in a timely fashion as required by statute. Thus, any argument by plaintiff that the crew's failure to blow the train's whistle as required by statute proves her failure to keep a careful lookout claim fails.
Additionally, the duty of the train crew to keep a careful lookout did not require it to be clairvoyant and know what the approaching decedent was going to do. Nor were they required to stop the train merely because a vehicle was seen slowly approaching a train crossing. Bunch v. Mo. Pacific R. Co., 386 S.W.2d 40, 43 (Mo.1965). Moreover, the evidence shows that the crew could not discern that decedent was not going to stop until they were two seconds (approx. 50 yds.) from the Massas crossing. As plaintiff's own expert stated, unless it is "shown that the horn wasn't blown" as required, there was no fault on the part of the train crew because once "it becomes apparent that Mr. Bryan was not going to stop, it's too late for them to do anything ..."

d. and e. Failure to Adequately Protect the Crossing

Plaintiff next alleges that defendant N & W was negligent in failing to adequately protect the Massas crossing by failing to erect and maintain automatic warning lights and automatic gates with flashing light signals.
Defendant N & W argues that this claim is preempted. Defendant N & W claims that federal funds were used to install the warning device in question, and when such fund are used, federal grade crossing regulations *1036 preempt all state tort law claims which allege that the railroad should have provided additional safety devices at the Massas crossing.
Defendant N & W also argues that this claim is preempted by state law. Defendant N & W claims that the state assumed jurisdiction over the Massas crossing when it ordered the installation of crossbucks, and once the state exercises jurisdiction over a crossing, a railroad may not be held liable for an accident allegedly caused by inadequate warning devices.
In response, plaintiff claims that preemption does not apply because defendants have failed to establish that federal money funded the installation of the crossbucks at the crossing. Plaintiff further argues that the record, including the state order upon which federal funding would have been based, refutes the possibility that federal funding of the crossbucks represents a determination by the government that the crossing was adequately protected.
Plaintiff also claims that the characteristics of 23 C.F.R. § 646.214(b)(3) are present at the Massas crossing and, thereby, under the applicable caselaw preemption is precluded unless automatic gates were installed, a diagnostic team recommended against the installation of such gates, or the Federal Highway Administration (FHWA) approved the warning device as adequate. Lastly, plaintiff argues that if federal law preempts this common law claim, she claims that she still has a claim under federal law as to whether the fact that automatic gates were not installed, though allegedly required to be under § 646.214(b)(3), constitutes a breach of defendant N & W's duty of care.
With regard to state preemption, plaintiff argues that the state never took jurisdiction over the Massas crossing. Thus, plaintiff argues that defendant N & W cannot invoke state preemption on her claim of inadequate warning devices.
In reply, defendant N & W argues that it has submitted sufficient and reliable evidence establishing that federal funds paid in part for the crossbucks. Furthermore, defendant N & W claims that the fact that federal funds were used is sufficient in and of itself to trigger preemption. Defendant N & W also argues that the facts that § 646.214(b)(3) requires automatic gates with flashers in certain cases and that no diagnostic team ever found the crossbucks to be adequate is inconsequential on the issue of federal preemption.
Defendant N & W also argues that plaintiff cannot avoid preemption by claiming there is a question of fact as to whether § 646.214(b)(3) was violated and that that regulation does not create a private cause of action. Finally, defendant N & W argues that the state did exercise jurisdiction over the Massas crossing.
Section 646.214(b)(3) states that if certain conditions are met on any project where federal funds participate in the installation of adequate warning devices, the installation must include automatic gates with flashing light signals. Section 646.214(b)(3) states that if such devices are not required, the type of warning device installed, whether that determination is by a state agency and/or the railroad, is subject to the approval of the FHWA.
In the Easterwood case, the Supreme Court held that state tort law is preempted in cases where § 646.214(b)(3) or (4) are applicable. Easterwood, 113 S.Ct. at 1740-41. Those sections apply whenever federal funds are involved in the installation of the warning devices. Id. The rationale behind such preemption is that these regulations displace state and private decision-making authority by establishing a federal law requirement. Id.
A review of defendant N & W's exhibits sufficiently shows that reflectorized crossbucks were built at the Massas crossing with 90% federal funds. These include an order by the Missouri Public Service Commission authorizing the installation of warning devices. This order states in part that the railroad will be reimbursed for 90% of the cost of installation of the crossbucks "from funds appropriated for that purpose by the federal government."
There is also an affidavit from James McCloskey, who was an attorney for defendant N & W at the time the crossbucks were installed at the Massas crossing. This affidavit states in part that Mr. McCloskey has personal knowledge that federal funds were *1037 used to pay 90% of the installation cost of the crossbucks.
These exhibits shifted the burden onto plaintiff, who cannot rest on the allegations in her pleadings but must by affidavit or other evidence set forth specific facts showing that a genuine issue of material fact exists. Plaintiff has offered no such evidence showing that the warning signs were built without the use of federal funds.
Accordingly, the Court finds that federal funds were used in install the crossbucks in question. Moreover, pursuant to Easterwood, § 646.214(b)(4) is applicable and, thus, plaintiff's claim is preempted.
Plaintiff's argument, that the record refutes the possibility that federal funding of the crossbucks represents a determination by the government that the crossing was adequately protected, runs counter to Easterwood and the applicable statute and regulations. Easterwood states "for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed ..." Id. at 1741. Furthermore, under 23 U.S.C. § 109(e), federal funds shall be spent only if the safety devices being installed at a crossing comply with federal standards of adequacy.
The Court has already found that federal funds were expended on the crossbucks in question and thus, pursuant to Easterwood and § 109(e), they are presumed adequate. Plaintiff has offered no evidence to the contrary. Thus, since federal funds were spent on federally approved warning devices, preemption applies. Elrod v. Burlington Northern Ry. Co., 68 F.3d 241, 244 (8th Cir.1995).
Plaintiff makes a convoluted argument that because the state order authorizing the installation of warning devices at rail crossings states that the devices were installed as "minimum protection" and that "[t]he instant application does not affect those crossings in the state which may warrant installation of additional protection devices," that any use of federal funds was simply meant to achieve the minimum protection. Thus, plaintiff concludes that such an expenditure does not represent a determination that the crossbucks installed at the Massas crossing were adequate.
The Court does not understand how the state's determination that the crossbucks that were installed would provide "minimum" protection conflicts with the federal determination that such crossbucks would provide "adequate" protection. The words "minimum" and "adequate" are not inconsistent with each other. Furthermore, regardless of what the state believes as to the protection afforded by the crossbucks installed, the FHWA determined that such a device would give adequate protection and, thus, authorized the expenditure of federal funds. Thus, plaintiff's state law claim is preempted. Easterwood, supra.
Plaintiff's claim that the characteristics of 23 C.F.R. § 646.214(b)(3) are present at the Massas crossing and, thereby, preemption is precluded unless automatic gates were installed, a diagnostic team recommended against the installation of such gates, or the FHWA approved the warning device installed as adequate, fairs no better. As detailed above, the spending of federal funds presupposes that the crossbucks that were installed were adequate. Elrod, supra.[2]
Plaintiff alternatively claims that if federal law preempts her common law claim, defendant N & W's motion still should not be granted. Plaintiff argues that if federal law does preempt, that simply means that federal law, not state law, sets the standard by which to evaluate defendant's behavior to see if it constitutes negligence. Plaintiff claims § 646.214(b)(3), and its requirement that automatic gates be installed if any of that regulation's listed characteristics are present, sets the standard. Plaintiff concludes that because such gates were not installed, a genuine issue of fact remains as to whether defendant N & W breached a duty of care owed to her.
This argument fails. By its language, § 646.214(b)(3) does not create a private *1038 cause of action for negligence, and plaintiff cites to no caselaw supporting such an argument. In fact, there is no federal common law tort for negligence. If plaintiff's state law negligence claim was preempted by federal law, she would have to base any federal claim on violations of federal statutes, such as the Federal Railroad Safety Act, 45 U.S.C. §§ 421-447, or the Highway Safety Act, 23 U.S.C. §§ 101-160. Plaintiff has made no such allegations.
Plaintiff cites to the case Michael v. Norfolk Southern Ry. Co., 74 F.3d 271 (11th Cir.1996) to support this argument. In Michael, the Court found that if the defendant railroad did not install the warning device called for by federal regulations, plaintiffs had a state law claim for negligent design that was not preempted. Id. at 273.
In the case at bar, however, plaintiff takes issue with the determination not to install automatic gates, a decision upon which defendant N & W had no input. It would be ludicrous to hold a railroad liable based on the government's decision as to what safety device was needed at a given crossing. Additionally, this Court will not delve into the question of whether the Secretary's decision that crossbucks were adequate warning devices was correct. Armijo v. Atchison, Topeka & Santa Fe Ry. Co., 87 F.3d 1188, 1192 (10th Cir.1996). Finally, plaintiff has not raised any claim for negligent design as was done in the Michael case.
Lastly, the Court agrees with defendant N & W's argument that plaintiff's claims concerning inadequate warning devices are also preempted under state law. Defendant N & W's exhibits establish that the State of Missouri ordered the installation of the crossbucks at the Massas crossing. That establishes the state's exclusive jurisdiction over the crossing, which in turn frees railroads from any liability due to inadequate safety devices. Moore v. Atchison, Topeka & Santa Fe Ry. Co., 966 F.2d 351, 353 (8th Cir.1992).
Plaintiff argues that the state order which authorized the installation of warning devices at the Massas crossing was a blanket order covering several crossings but was not an order with respect to any particular crossing. It is not, however, the breadth of a state order which determines whether preemption is invoked. If the state exercises jurisdiction over a crossing, be it individually or generally, preemption occurs.

2. Extraordinarily Hazardous

Plaintiff also alleges in her complaint that the crossing over which defendant N & W's tracks ran was "extraordinarily hazardous" because a motorist's view of the approach of defendant N & W's trains is obstructed by terrain, the approach of trains is hidden from the view of motorists, and the crossing is not guarded by automatic gates or flashing signals.
Defendant N & W argues that this claim is preempted. Defendant N & W argues that the federal regulations used to determine the appropriate warning devices on a particular crossing have preempted the common law notion of a dangerous crossing. Plaintiff did not reply to this argument in her response.
Regardless of how dangerous the approach is, the federal government made a determination as to what safety device was necessary at the Massas crossing. This determination encompassed the factors plaintiff alleges in her complaint to establish that the crossing was ultrahazardous. Thus, the claim is preempted. See Cartwright v. Burlington Northern Railroad Co., 908 F.Supp. 662, 665 (E.D.Ark.1995); Bowman v. Norfolk Southern Ry. Co., 832 F.Supp. 1014, 1017 (D.S.C. 1993), aff'd, 66 F.3d 315 (4th Cir.1995); Walker v. St. Louis-Southwestern Ry. Co., 835 S.W.2d 469, 474 (Mo.App.1992). To allow an exception to preemption in this case based on an ultrahazardous condition would create an exception that would swallow the rule. Bowman 832 F.Supp. at 1018.
Thus, defendant N & W is entitled to summary judgment on all of plaintiff's claims. In light of this decision and the above discussion, the Court declines to address defendant N & W's additional argument that the decedent's actions were the sole cause of the collision.
Finally, since the third-party defendants were brought into this suit solely to indemnify defendant N & W from any loss it may suffer on plaintiff's claims, the Court granting *1039 defendant N & W's motion for summary judgment on plaintiff's claims effectively ends this lawsuit. The third-party claims against City and County are therefore dismissed. Accordingly, defendant N & W's motion to compel and to produce directed at third-party defendant City is denied as moot.
IT IS HEREBY ORDERED that defendant N & W's motion for summary judgment is granted.
IT IS HEREBY FURTHER ORDERED that plaintiff's motion to amend is granted.
IT IS HEREBY FURTHER ORDERED that defendant N & W's motion to compel and to produce is denied as moot.
IT IS HEREBY FURTHER ORDERED that third-party defendants City of Jonesburg and County of Montgomery are hereby dismissed.
NOTES
[1] It is not completely clear as to whether or not plaintiff intended these allegations to be separate claims for relief. Defendant N & W, however, has treated them as such and this Court will do likewise.
[2] Plaintiff cites to language in a footnote in Elrod as implying that if the characteristics of § 646.214(b)(3) are present, there is no preemption. However, the footnote merely states that the catch-all provisions of § 646.214(b)(4) applied in that case "because none of the triggering conditions found in 23 C.F.R. § 646.214(b)(3) were present." Elrod, 68 F.3d at 243, n. 5.